**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 24, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TRAVIS DENNY,

Defendant-Appellant.

No. 11-2029

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. Nos. 1:09-CV-01049-JAP-KBM & 1:04-CR-00666-JAP-1)**

---

Submitted on the briefs:[*]

James C. Loonam, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

---

Before **MURPHY**, **ANDERSON**, and **HARTZ**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant Travis Denny, a federal inmate, seeks a certificate of appealability (COA) to allow him to appeal the district court's dismissal of his motion for relief under 28 U.S.C. § 2255. *See* 28 U.S.C. § 2253(c)(1)(B) (COA required to appeal dismissal of § 2255 motion). The court ruled that his motion was time-barred under the one-year limitations period of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See id.* § 2255(f). Most of Defendant's challenges to that ruling are routine, but he raises a novel claim based on the AEDPA provision that delays the start of the limitations period until "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence," *id.* § 2255(f)(4). He argues that he should be given additional time because he discovered the pertinent facts only by exercising extraordinary diligence. We grant a COA on the timeliness issue but affirm the district court.

## I.    BACKGROUND

The magistrate judge conducted an evidentiary hearing on the timeliness of Defendant's § 2255 motion. We take the following from the testimony at the hearing and the record on appeal.

Defendant was charged in the United States District Court for the District of New Mexico with possession with intent to distribute 500 or more grams of cocaine, *see* 21 U.S.C. § 841(a)(1) and (b)(1)(B), after a federal agent seized cocaine from his compartment on a sleeper train. *See United States v. Denny*,

-2-

441 F.3d 1220, 1221 (10th Cir. 2006). His motion to suppress the cocaine was granted by the district court, but we reversed on appeal. *See id.* Defendant then pleaded guilty to the charge.

On September 26, 2007, Defendant was sentenced to 240 months' imprisonment, a substantial downward variance from the guideline range of 324 to 405 months. Before the marshals escorted him from the courtroom, he had a brief conversation with his then-counsel, Joe Romero. He told Romero that he wished to appeal. Romero responded that it would be unwise to appeal because he could ultimately receive an even longer sentence if the government also decided to appeal the downward variance. The result, as the magistrate judge found, was that "Defendant left the courthouse believing an appeal would be filed, and Mr. Romero left the courthouse believing he had dissuaded his client from pursuing an appeal." R. Vol. 1, at 88.

Not having received any communication from Romero about his appeal, Defendant, while in prison, called Romero's office in January or February of 2008 and learned that Romero was on military duty at Guantanamo Bay, Cuba. Romero had wound down his practice, retaining only a part-time paralegal. She forwarded emails to him, sent him a weekly log of his mail, and helped two other attorneys who rented space in the same building and had taken over some of his cases. Romero admitted that he "didn't have the most reliable system in the world while

[he] was gone." *Id.*, Vol. 2, at 138. The person with whom Defendant spoke was not the paralegal but an unidentified man, who said that he would have to email Romero to find out whether an appeal had been filed. Apparently, Defendant heard nothing further from Romero's office before Romero's return.

Defendant called the district-court clerk's office in late September 2008 and was told that no notice of appeal had been filed in his case. He contacted some lawyers, but he could not afford to hire one. By November, however, he had consulted an inmate in the prison law library who offered legal assistance. The inmate said that he would need additional documents to determine what Romero had filed. In January 2009 Defendant finally spoke with Romero, who had come back from Cuba, and was told that no notice of appeal had been filed. When Defendant called Romero again in June, Romero said that he would send Defendant's wife a disk containing his whole file and suggested that Defendant look into postconviction relief. Defendant received his file in July or August 2009. The inmate in the prison library eventually prepared a § 2255 motion for Defendant, which Defendant submitted to the district court pro se.

Defendant's § 2255 motion was filed on November 2, 2009. Attached to the motion was a certificate of mailing stating that Defendant had presented it to prison authorities for mailing on October 20. The motion alleged that Romero had provided ineffective assistance of counsel by failing to file a timely appeal

-4-

from Defendant's sentence. The government did not contest the merits of the ineffective-assistance claim, but argued that the § 2255 motion was untimely.

The district court, adopting the recommendations of the magistrate judge, determined that it was unnecessary to decide whether Defendant was entitled to the benefit of the prison mailbox rule, *see Price v. Philpot*, 420 F.3d 1158, 1163–64 (10th Cir. 2005) (pleading mailed by prisoner is deemed filed in district court when prisoner deposits pleading in prison legal mail), because his motion was not filed within the one-year limitations period set by AEDPA even if deemed filed on October 20, 2009. It also ruled that Defendant was not entitled to equitable tolling and dismissed the § 2255 motion as untimely. Defendant filed a timely notice of appeal, and his brief includes a request for a COA.

## II. ISSUES ON APPEAL AND STANDARDS OF REVIEW

Section 2255(f) establishes a one-year limitations period for filing a § 2255 motion. The limitations period commences on the latest of four dates. Defendant relies on only two of them: "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action[,]" § 2255(f)(2), and "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence[,]" § 2255(f)(4).

Defendant argues on appeal (1) that the AEDPA limitations period did not begin to run until January 2009, when Romero's failure to file a notice of appeal "could have been discovered through the exercise of due diligence[,]" § 2255(f)(4); (2) that he is actually innocent of his sentence, so any untimeliness of his § 2255 motion should be forgiven; (3) that the limitations period has yet to begin running and his § 2255 motion is timely because Romero's failure to file a notice of appeal constituted an unconstitutional impediment created by the government, *see* § 2255(f)(2); and (4) that even if the limitations period began to run in September 2008, when he was informed that no notice of appeal had been filed, the limitations period should be equitably tolled because a fellow inmate exploited his ignorance of the statute of limitations, the prison placed him in administrative segregation for four months without access to his legal resources, and Romero's office inordinately delayed providing documents to him.

We generally review de novo the dismissal of a habeas petition on the ground of untimeliness. *See Fleming v. Evans*, 481 F.3d 1249, 1254 (10th Cir. 2007) (denial of an application for relief under 28 U.S.C. § 2254 on the ground of untimeliness under 28 U.S.C. § 2244(d) is generally reviewed de novo). Questions of statutory interpretation are also reviewed de novo. *See United States v. Willis*, 202 F.3d 1279, 1280 (10th Cir. 2000). But we review the district court's fact findings for clear error. *See Robinson v. Golder*, 443 F.3d 718, 720 (10th Cir. 2006). And "[w]e review the district court's decision on equitable

tolling for an abuse of discretion." *See United States v. Gabaldon*, 522 F.3d 1121, 1124 (10th Cir. 2008).

## III. DISCUSSION

### A. Discovery that Notice of Appeal Had Not Been Filed

AEDPA provides that a § 2255 motion is timely if it was filed within a year of when "the facts supporting the claim or claims presented [that is, that Romero had failed to file a notice of appeal] could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). This provision is an example of what are called "discovery rules" for delaying the accrual of a cause of action. Discovery rules are common in statutes of limitations, both federal, *see*, *e.g.*, 15 U.S.C. § 77m (1994) ("No action shall be maintained . . . unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence."), and state, *see*, *e.g.*, Colo. Rev. Stat. § 7-74-107 (1986) ("An action for misappropriation of a trade secret shall be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."). And they are often read into statutes of limitations that are not explicit on the point. *See Rotella v. Wood*, 528 U.S. 549, 555 (2000) ("Federal courts, to be sure, generally apply a discovery accrual rule when a statute is silent on the issue . . . .").

The AEDPA rule differs from most discovery rules in one respect. The typical provision starts the limitations period either (1) when the plaintiff has actually discovered the pertinent facts or (2) when a person exercising reasonable diligence would have discovered those facts. The AEDPA provision contains only the second test, an objective standard. *See Great Rivers Coop v. Farmland Indus.*, 120 F.3d 893, 896 (8th Cir. 1997) (referring to reasonable-diligence requirement as an "objective standard"); *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 609 (7th Cir. 1995) (similar). It is hard to think of any reason why Congress omitted the actual-knowledge test, and perhaps it should be read into the AEDPA provision. *See Aron v. United States*, 291 F.3d 708, 711 n.1 (11th Cir. 2002) (leaving the issue for another day); *Wims v. United States*, 225 F.3d 186, 190 n.5 (2d Cir. 2000) (same). But the absence of the first test should have little practical effect; it would be most unusual for the first test to be satisfied when the second is not.

The AEDPA discovery rule does not help Defendant. As he acknowledges, he was told by the district-court clerk's office in September 2008 that no appeal had been filed. That failure to file a notice of appeal was the critical fact supporting his claim of ineffective assistance of counsel. Yet Defendant did not file his § 2255 motion until November 2, 2009, and the prison-mailbox rule would not advance the effective filing date earlier than October 20. Defendant offers

two arguments why the disclosure from the clerk's office did not start the one-year limitations period. Neither is persuasive.

First, Defendant contends that the limitations period did not begin when he talked to the court clerk because he had reason to doubt the clerk's statement. But even if Defendant had not "actually discovered" the failure to file a notice of appeal because he did not subjectively believe what the clerk said, the AEDPA test is an objective one. There was no reasonable basis for Defendant's doubt. Without the need to exercise any further diligence, a reasonable person could have discovered the failure to file when so advised by the clerk. The limitations period began to run at that time because the failure to file was reasonably ascertainable. *Cf. N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629-30 (10th Cir. 2008) (construing Kansas discovery rule, which stated that cause of action accrues when "fact of injury becomes reasonably ascertainable to the injured party" (internal quotation marks omitted)).

Second, Defendant argues that he should not be penalized for his "super diligence" in contacting the court clerk to inquire whether a notice of appeal had been filed. Aplt. Br. at 34. He does not, however, support his position with any citation to authority, nor have we found any. That is not surprising. The exercise of reasonable diligence is an ongoing process. What is required at any particular time depends on what one has notice of at that time. When additional information is obtained, the standard of reasonable diligence may demand action that would

not have been demanded without receipt of the information. *See*, *e.g.*, *Grynberg v. Total S.A.*, 538 F.3d 1336, 1348–49 (10th Cir. 2008) (determining when plaintiff should have known of factual basis for claim by considering when pertinent facts were disclosed in business publications). It is irrelevant whether that information has come to the defendant's attention by serendipity or diligence, even exceptional diligence. The question is whether the defendant acted with reasonable diligence after the information was acquired. And once the defendant could have discovered the pertinent facts, the § 2255 motion must be filed within one year.[1] Discovery rules are based on equitable principles and there is nothing equitable about a rule that permits the claimant to be dilatory in pursuing a lead if the lead was acquired through special effort. As the Supreme Court recently observed: "Allowing tolling to continue beyond the point at which a . . . plaintiff is aware, or should have been aware, of the facts underlying the claim would quite certainly be *inequitable* and inconsistent with the general purpose of statutes of limitations: to protect defendants against stale or unduly delayed claims." *Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1420 (2012) (internal quotation marks omitted). Our refusal to recognize Defendant's proffered "super diligence" rule will not discourage potential claimants from making extra efforts

---

[1]    Of course, that one-year period cannot be shortened on the ground that the defendant should have been more diligent in pursuing the claim after the "discovery" date. *See Wims*, 225 F.3d at 190.

to discover the relevant facts. The sooner the claimant can discover the facts supporting a claim, the sooner the claimant can obtain relief. The prospect of obtaining quicker relief is sufficient reward for extra diligence. We see no reason to provide as an additional incentive the right to pursue in a dilatory fashion any information obtained through that extra diligence.

## B.    Other Contentions

Defendant's second argument (that untimeliness is excused by his actual innocence of his sentence) and third argument (that he was impeded by government action) require little discussion. Although the untimeliness of a § 2255 motion may be excused if the defendant is "actually innocent," *see United States v. Gabaldon*, 522 F.3d 1121, 1124 (10th Cir. 2008) (internal quotation marks omitted), a defendant "cannot be actually innocent of a noncapital sentence," *see Reid v. Oklahoma*, 101 F.3d 628, 630 (10th Cir. 1996) (internal quotation marks omitted). And even if Romero's failure to file a notice of appeal could be deemed governmental action, which we doubt, Defendant cannot benefit from § 2255(f)(2), which delays the start of the limitations period until "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action." Defendant correctly argues that he was entitled to assume that Romero had filed a notice of appeal because he had told Romero that he wished to appeal. *See*, e.g.,

-11-

*United States v. Guerrero*, 488 F.3d 1313, 1315 (10th Cir. 2007) (discussing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)). But the impediment caused by Defendant's reliance on his attorney was removed once he was notified of his attorney's failure to file a notice of appeal. And that notice, as we have already discussed, occurred well over a year before he filed his § 2255 motion.

Finally, Defendant argues that the limitations period should be equitably tolled because of the combination of three circumstances: (1) he was misled by an inmate librarian; (2) he lacked access to his legal materials, the law library, or the inmate librarian when he was in administrative segregation for a total of four months between November 2008 and mid-June 2009; and (3) Romero's office was slow to respond to his document requests. We reject the arguments.

First, Defendant's ignorance of the law and reliance on another inmate do "not relieve [him] from the personal responsibility of complying with the law." *Marsh v. Soares*, 223 F. 3d 1217, 1220 (10th Cir. 2000).

Second, the magistrate judge, after hearing Defendant's testimony at an evidentiary hearing, did not believe that the prison had denied him access to requested legal materials. She noted a Bureau of Prisons regulation, 28 C.F.R. § 543.11(j), that requires a warden, "[w]ith consideration of the needs of other inmates and the availability of staff and other resources," to provide access to legal materials to inmates in segregation. Defendant argues that the quoted language could have been relied on by prison authorities to deny him access. But

the magistrate judge pointed out that "nowhere in his *pro se* submissions or his testimony does Defendant assert that anything was confiscated, or that he even requested his legal materials or a § 2255 form while he was in prolonged segregation, or that he was not allowed to receive correspondence from his wife, who was the one working on obtaining documents for [him]." R. Vol. 1, at 100. The magistrate judge's findings, which were adopted by the district court, were not clearly erroneous. In light of those findings, Defendant cannot show that his time in segregation caused his § 2255 motion to be late.

Third, although Defendant complains of the delay in receiving documents from Romero, he received what he requested in July or August, giving him sufficient time to file a timely § 2255 motion by late September (a year after he was informed that no notice of appeal had been filed). Also, as the magistrate judge noted, Defendant failed to show diligence in trying to obtain from other sources (such as the court's docket sheet) the records of what Romero had filed, as requested by the inmate librarian. And one could question the diligence of Defendant in seeking records from Romero. *Cf. Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 750-51 (6th Cir. 2011) ("the unavailability of or delay in receiving [trial] transcripts [was] not enough to entitle a habeas petitioner to equitable tolling" under AEDPA because transcripts were not essential for filing habeas petition).

We therefore conclude that the district court did not abuse its discretion in denying equitable tolling.

## IV.  CONCLUSION

The judgment of the district court is AFFIRMED.