FILED
United States Court of Appeals
Tenth Circuit

**November 14, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

VICTOR MADRID,

       Petitioner - Appellant,

v.

EDDIE WILSON, Warden, Wyoming
State Penitentiary,

       Respondent - Appellee.

No. 14-8017
(D.C. No. 2:13-CV-00128-NDF)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **BALDOCK**, and **HOLMES**, Circuit Judges.

Two suppressed documents were uncovered over a decade after Victor Madrid

was convicted of felony murder. Claiming that these documents were material, Madrid

sought habeas relief under 28 U.S.C. § 2254. The district court held that his claim

relating to one document was untimely and that the other document was not sufficiently

material. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

      [*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 32.1.

# I

On November 30, 1993, 76-year old Velma Filener was found stabbed to death at her friend Marie Bressler's home in Casper, Wyoming. About a month later, police responded to a medical assist call reporting Victor Madrid's apparent drug overdose. Madrid described to police a dream about stabbing an old woman, and over the course of two days of interrogation he related details about a situation similar to Filener's murder. These included that a woman left the house in a car, the house's layout, and the use of a pillowcase in the burglary. Madrid initially presented these facts as a dream, but he eventually confessed to participating in the murder. Madrid later argued that he confessed to end the police interrogation and not because he committed the crime.

At Madrid's trial, his ex-girlfriend, a juvenile we refer to as HC, testified that she, Madrid, and two other juveniles burglarized Bressler's home the night of the murder. HC testified that she saw Madrid leave the house covered in blood, that she washed his bloody shirts, and that he later told her he had killed an "old woman." During the trial, her testimony was called into question for its numerous contradictions. HC's own mother testified against her credibility. In March 2012, HC recanted her testimony.

HC's testimony and Madrid's confession were not the only evidence tying him to the murder. For example, two other witnesses testified that they heard Madrid say that he had murdered an "old lady." Several witnesses testified that Madrid was known to carry and play with a butterfly knife, which Madrid stated was the murder weapon in his

-2-

confession. The jury convicted Madrid of felony murder, and he was sentenced in 1995 to life in prison.

In 2011 and 2012, the Utah-based Rocky Mountain Innocence Center ("Innocence Center"), which also operates in Wyoming, found two pieces of undisclosed evidence which form the basis of Madrid's current habeas action. In October 2010, the Innocence Center first received access to the files of the Natrona County District Attorney's Office. The Innocence Center obtained Madrid's case file on September 29, 2011. On October 29, 2011, they discovered the "Lord Memo," which identified a kitchen knife found in Bressler's home as a possible murder weapon. The Innocence Center later determined that the Memo had not been disclosed to Madrid's trial counsel.

In March 2012, the Natrona County District Attorney's Office provided the Innocence Center with a file relating to a different case. On June 21, 2012, a law student working for the Innocence Center found a document in that file that seemed relevant to Madrid's case. That document, the "Gunner Memo," described a tip that police received from a former informant who was then working in a tattoo parlor in Casper. The informant stated that a man named Jason reported knowing who had committed the Filener murder. Jason stated that the murder was committed by a "heavy cranker"[1] who lived near Chef's Coop (a Casper restaurant), was tall, married, recently released from prison, had "long and scraggly hair," drove a red vehicle with Colorado plates, played

---

[1] A methamphetamine user.

with a knife, and was "doing burglaries" the night of the murder.  The Memo also described a person older than Madrid.  The tip stated that Jason would return to the informant's tattoo parlor to have his tattoo finished the next day.  The Innocence Center confirmed the Gunner Memo was not disclosed to Madrid's trial counsel.

Madrid's local counsel, the University of Wyoming Defender Aid Program, filed a § 2254 petition on Madrid's behalf on June 18, 2013.  Madrid argued that the state's failure to disclose the Lord and Gunner Memos and reliance on HC's allegedly perjured testimony violated his rights under Brady v. Maryland, 373 U.S. 83 (1963).  The district court found that the HC perjury and Lord Memo claims were untimely and concluded, sua sponte, that Madrid was not entitled to equitable tolling.  It later granted summary judgment against Madrid on the Gunner Memo claim, concluding that the Memo was not sufficiently material.

Madrid timely appealed.  We granted a Certificate of Appealability on the timeliness of the Lord Memo claim, whether equitable tolling salvages that claim, and the grant of summary judgment on the Gunner Memo claim.

## II

We review the district court's dismissal of a habeas corpus petition for untimeliness de novo and its denial of equitable tolling for abuse of discretion.  See United States v. Denny, 694 F.3d 1185, 1189 (10th Cir. 2012).  We review grants of summary judgment de novo.  Thomas v. City of Blanchard, 548 F.3d 1317, 1322 (10th Cir. 2008).  Summary judgment is appropriate if there is no genuine issue of material fact

and the movant is entitled to judgment as a matter of law.  Mata v. Anderson, 635 F.3d 1250, 1252 (10th Cir. 2011).  We view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party.  Mumby v. Pure Energy Servs. (USA), Inc., 636 F.3d 1266, 1269 (10th Cir. 2011).

**A**

**1**

Madrid argues that his claim based on the Lord Memo was timely under 28 U.S.C. § 2244(d)(1)(D), which requires state prisoners to file habeas petitions within one year of when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  We have defined "due diligence" as an "objective standard" that refers to when a plaintiff "could have" discovered the pertinent facts, not when she actually discovered them.  Denny, 694 F.3d at 1189.  But "[w]hat is required at any particular time depends on what one has notice of at that time."  Id. at 1190.

In this case, the district court properly evaluated the timeliness of Madrid's claims on a claim-by-claim basis.  See Pace v. DiGuglielmo, 544 U.S. 408, 416 n.6 (2005).  It concluded that Madrid's Brady claim based on the Lord Memo was untimely under § 2244(d)(1)(D) because Madrid filed his habeas petition on June 18, 2013.  This was more than a year after September 29, 2011, when the Innocence Center received the Lord Memo, and October 29, 2011, when they read it.

Madrid fails to demonstrate that he could not have filed his habeas petition within a year of discovering the Lord Memo.  He argues that due diligence was met because the

-5-

Innocence Center had to investigate whether the Lord Memo had been disclosed to his trial counsel, but he does not explain why this investigation delayed filing by more than a year. Indeed, the record makes clear that the Innocence Center conducted this investigation in June 2012, less than a year after discovering the Lord Memo. Madrid argues that he did not file his petition until June 2013 because the Innocence Center has limited resources. But § 2244(d)(1)(D) makes no mention of limited resources.

Alternatively, Madrid argues that the Innocence Center did not realize the Lord Memo's significance until they discovered the Gunner Memo on June 21, 2012, and that we should consider the latter discovery to be the factual predicate of an umbrella Brady claim based on both Memos. Madrid argues that courts must assess the materiality of "suppressed evidence collectively, not item by item." Kyles v. Whitely, 514 U.S. 419, 436 (1995). But materiality is distinct from timeliness, which we evaluate on a claim-by-claim basis. Prendergast v. Clements, 699 F.3d 1182, 1185-88 (10th Cir. 2012).[2] Although we are sympathetic to a habeas petitioner's desire to avoid penalties for successive filings by building as strong a case as possible before filing, the factual predicate of Madrid's Lord Memo claim was the discovery of the Lord Memo itself, not

---

[2] Even if we were to credit Madrid's materiality-based timeliness theory, the reasons that the Lord and Gunner Memos are arguably material are distinct. The Lord Memo discusses a possible murder weapon, and the Gunner Memo is a tip about a possible suspect. Madrid could not build an alternate theory of the case using the two Memos, because nothing in the Lord Memo relates to the suspect described in the Gunner Memo. To the contrary, the Gunner Memo describes the suspect as sometimes playing with a knife, which would contradict the Lord Memo's theory that Bressler's kitchen knife was the murder weapon.

the Gunner Memo.

**2**

We have also granted Madrid a certificate of appealability to appeal the district court's sua sponte conclusion that Madrid was not entitled to equitable tolling of his Lord Memo claim. See Holland v. Florida, 560 U.S. 631, 649 (2010) (recognizing that § 2244(d)(1)(D)'s statute of limitations can be tolled). Equitable tolling is available if a petitioner shows she has diligently pursued her rights and an extraordinary circumstance prevented timely filing. Id.

Madrid argues that the district court abused its discretion by denying equitable tolling because once his attorneys discovered the Gunner Memo, they investigated whether the Lord Memo had been disclosed. Madrid repeats the argument about his attorneys' limited resources, and adds that they had difficulty securing co-counsel in Wyoming to bring his habeas claim. But as explained above, the Innocence Center's limited resources do not transform Madrid's failure to file his habeas petition within a year of discovering the Lord Memo into diligent pursuit of his rights. Nor is delay caused by difficulty in finding Wyoming counsel a "rare and extraordinary circumstance." This is especially true because the Innocence Center, though based in Utah, also has a mission to correct wrongful convictions in Wyoming. The Innocence Center's failure to file a habeas claim within a year of discovering the Lord Memo was arguably negligent, but Madrid's own arguments about the Innocence Center's diligent investigation and careful work building a strong habeas case before filing defeat any

-7-

claim of "egregious misconduct." See Fleming v. Evans, 481 F.3d 1249, 1255, 1257 (10th Cir. 2007) (concluding that although "[h]abeas counsel's negligence is not generally a basis for equitable tolling," habeas counsel's "sufficiently egregious misconduct" may justify equitable tolling).

## B

## 1

The government argues on appeal that the district court erred by concluding Madrid's claims based on the Gunner Memo were timely. Because we may affirm the district court on any basis that is apparent from the record, the government need not file a cross-appeal in a habeas case to reassert a procedural defense. Romano v. Gibson, 239 F.3d 1156, 1168-69 (10th Cir. 2001).

Specifically, the government argues that because Madrid's attorneys received the Gunner Memo in March 2012, in the file of another case, they "could have" discovered it at that time. Madrid did not file his habeas petition until June 18, 2013, more than a year after the Innocence Center received the case file in March 2012, but less than a year after they discovered the Gunner Memo in the file and realized its relevance to Madrid's case. As the district court correctly reasoned, the Innocence Center had no reason to believe that the unrelated file would contain suppressed evidence from Madrid's case. Denny instructs us that "[w]hat is required at any particular time depends on what one has notice of at that time." 694 F.3d at 1190. The Innocence Center certainly had no notice that the unrelated case file contained a document relevant to Madrid's case. To conclude

-8-

otherwise would require defendants to search every case file in a prosecutor's office to ensure that nothing from their own case was misfiled.

Alternatively, the government repeats an argument the district court rejected on summary judgment: that Madrid could have discovered the Gunner Memo in October 2010 when the Innocence Center was first given access to the files of the Natrona County District Attorney's Office. The government points to an affidavit claiming that the Memo was in a manila envelope in one of the boxes that constituted Madrid's case file. Madrid submitted an affidavit from the Innocence Center staff attorney whose review of the files "confirm[ed] that the Gunner documents were not included in the prosecutor's files." Because this is a genuine issue of material fact, we agree with the district court that summary judgment is inappropriate. Viewing the facts in the light most favorable to Madrid, the non-moving party, we conclude that his Gunner Memo claim is timely.

**2**

Having determined that Madrid's Gunner Memo claim is timely, we must now assess its merits. <u>Brady</u> violations exist if: "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense." <u>Hooks v. Workman</u>, 689 F.3d 1148, 1179 (10th Cir 2012) (citations and quotations omitted). Materiality is the only disputed issue.

Evidence is material if "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." <u>Cone v. Bell</u>, 556 U.S. 449, 470 (2009). "A reasonable probability of a different result is . . . shown

when the government's evidentiary suppression undermines confidence in the outcome of the trial." Kyles, 514 U.S. at 434 (quotations omitted). Courts must assess the evidence "in light of the entire record." Mitchell v. Gibson, 262 F.3d 1036, 1063 (10th Cir. 2001) (citations and quotations omitted). "Evidence cannot qualify as material without first being admissible or at least 'reasonably likely' to lead to the discovery of admissible evidence." Banks v. Workman, 692 F.3d 1133, 1142 (10th Cir. 2012).

At the outset, we disagree with the district court's conclusion that the Gunner Memo is not material because Madrid matched the description of the suspect identified in the Gunner Memo. Viewing the facts in the light most favorable to Madrid, he could hardly be described as tall, long scraggly-haired, recently out of prison, married, living near Chef's Coop, or driving a red vehicle with Colorado plates. Madrid is only 5'7", and at the time of the murder he had six-inch long well-kempt hair, was not a recently released convict, appears to have been unmarried, did not live near Chef's Coop, and appears to have not owned a car. His propensity to play with a knife and use methamphetamine are the only traits he convincingly shares with the suspect described in the Gunner Memo.

Despite this conclusion, in light of the entire record, Madrid fails to demonstrate a reasonable probability that the result of the trial would have been different had the Gunner Memo been disclosed. The Gunner Memo is a vague description of a possible alternative suspect, which weighs lightly against the substantial evidence introduced against Madrid, including his habit of playing with a butterfly knife, his confession, his

-10-

ability to identify the Bressler house, HC's testimony, and testimony from two other witnesses implicating Madrid.

Madrid claims that the district court did not assess the evidence "in light of the entire record" by focusing on incriminating, rather than exculpatory evidence. He specifically argues that HC was not credible. But HC was thoroughly impeached at trial. The jury had ample reason not to believe HC's testimony, and Madrid does not explain why the Gunner Memo, pointing to an alternate suspect, would specifically have led the jury to further discredit her testimony. Given HC's thorough impeachment and the other evidence introduced at trial, the existence of a possible unknown alternate suspect does not undermine our confidence in the verdict. Madrid also notes that his confession was initially stated as a dream and was arguably coerced. But the jury heard arguments about the voluntariness of Madrid's confession, and again, Madrid fails to show a reasonable probability that the Gunner Memo would have led to a different outcome.

The weakness of Madrid's claim is evident when compared with alternate suspect evidence we have deemed material in other cases. In Smith v. Secretary of New Mexico Department of Corrections, 50 F.3d 801 (10th Cir. 1995), Smith challenged his conviction for the murders of a woman with whom he had a brief affair and of her friend. Id. at 807. It was later discovered that the prosecution had suppressed evidence of two traffic stops. In these stops, the woman's common law husband was pulled over near where the bodies were found and gave officers a false name, was found to have outstanding arrest warrants, made inculpatory statements, and had bloody women's

-11-

clothing in his car during the second traffic stop. Id. at 814. Additionally, Smith had a strong alibi for the time period of the murder. Id. at 808. Likewise, in Bowen v. Maynard, 799 F.2d 593 (10th Cir. 1986), Bowen was convicted of murder despite twelve witnesses testifying that at the time of the murder in Oklahoma City, Bowen was at a rodeo in Texas, three hundred miles away. Id. at 599. The prosecution suppressed evidence that the victim's ex-wife's new boyfriend, Lee Crowe, who matched the description of the murderer, had traveled to Oklahoma City at the time of the crime, and was suspected as serving as a hit man in several other murders. Id. at 600-602. The victim's ex-wife's roommate also informed police that Crowe and the ex-wife had planned to kill the victim. Id. The tenuous evidence presented in the Gunner Memo, which fails to concretely establish the alternate suspect's identity or motive, falls well short of the direct evidence linking the alternate suspect to the specific crime committed that was present in Smith and Bowen.

### III

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.


Entered for the Court


Carlos F. Lucero
Circuit Judge


-12-