FILED
United States Court of Appeals
Tenth Circuit

February 22, 2011

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

PAUL A. MUMBY; ERIC
HOLTZCLAW; WILLIAM G.
JOHNSON; JOHN PAZEJ, JR.;
RITTA PEAVLER; JAMES G.
RAUCH; JEROME G. RAUCH;
DAVID REDDIN; and others similarly
situated,

        Plaintiffs–Appellees,

v.

PURE ENERGY SERVICES (USA),
INC.,

        Defendant–Appellant.

No. 10-8030

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 2:09-CV-00077-ABJ)**

---

Walter V. Siebert of Sherman & Howard L.L.C., Denver, Colorado, for
Defendant–Appellant.

Alan S. Kaufman of Chamberlain, Kaufman & Jones, Albany, New York, for
Plaintiffs–Appellees.

---

Before **MURPHY**, **McKAY**, and **O'BRIEN**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

Pure Energy Services appeals the district court's decision on summary judgment, which found Pure Energy's violations of the Fair Labor Standards Act ("FLSA") to be willful and unreasonable. The thrust of Pure Energy's argument is that it should be allowed to both rely on *and* disregard advice of counsel in order to avoid a three-year statute of limitations and liquidated damages. We disagree, and we therefore affirm.

## BACKGROUND

Pure Energy, a subsidiary of a Canadian oilfield services company, has provided services to U.S. gas and oil wells since 2004. Its field employees, which include Plaintiffs, work twelve-hour shifts, seven days per week, with one week off for every three weeks worked. Thus, employees work approximately eighty-four hours per workweek.

During the events leading to this litigation, Pure Energy paid its field employees under a "day rate" compensation plan, whereby employees received a single daily payment regardless of the number of hours actually worked. Pure Energy defined its "day rate" not by the relevant regulation, 29 C.F.R. § 778.112, but rather as a daily rate consisting of a defined regular rate for the first eight hours and an overtime rate for the remaining four hours of the day. For those employees paid in this fashion, Pure Energy did not keep track of either daily or weekly hours worked.

Pure Energy's pay scheme, however, violated the FLSA, which requires

-2-

employers to compensate their employees "for a workweek longer than forty hours . . . at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). For an employee to be correctly paid under a day rate, a weekly "regular rate" is first calculated "by totaling all the sums received at such day rates . . . and dividing by the total hours actually worked." 29 C.F.R. § 778.112. The employee "is then entitled to extra half-time pay at this [regular] rate for all hours worked in excess of 40 in the workweek."[1] *Id.*

Since its field employees' work schedules exceeded forty hours per week, Pure Energy should have paid overtime for all hours worked over forty. Instead, Pure Energy paid only what it believed was a day rate which included, by its calculations, four hours of overtime per day. This formula did not comply with 29 C.F.R. § 778.112. Even by its own erroneous calculation, four hours of overtime per day falls well short of the FLSA-mandated overtime owed for all hours over forty where the employee works eighty-four hours each week.

In 2005, after one year of U.S. operations, Pure Energy began transferring

---

[1] Take, for example, an employee who works twelve hours per day, seven days per week, for a total of eighty-four hours per week. If he is paid a day rate of $120, he earns $840 per week. Because he worked eighty-four hours, his calculated "regular rate" is $10 per hour. But the employee is also entitled to forty-four hours of overtime pay. His overtime rate is defined as one-half of his regular rate, or $5 per hour. Thus, each week the employee earns $840 in day rate pay and an additional $220 in overtime.

management of its U.S. operations from Canada to the United States. When it transferred payroll functions to its new domestic management team, it hired a new manager, Cindy Rucker, to run payroll operations in compliance with U.S. labor standards. At the time of her hiring, Ms. Rucker was aware of the FLSA, but she was unfamiliar with day rates. When she expressed concerns about the company's compensation policy, Pure Energy's management referred Ms. Rucker to a Colorado attorney, Paul Hurcomb.

In January 2006, after speaking with Ms. Rucker and reviewing some of Pure Energy's employment offer letters, Mr. Hurcomb advised Ms. Rucker that Pure Energy's day rate policy complied with the FLSA so long as the company itemized regular and overtime rates and did not have its field employees work more than twelve hours per day. Mr. Hurcomb also discussed with Ms. Rucker that any weekly hours over forty had to be paid as overtime, regardless of the day rate. Mr. Hurcomb did not perform any legal research regarding day rates or the FLSA. Although he essentially stated the forty-hour overtime requirement correctly, his other advice was incorrect.

After receiving Mr. Hurcomb's advice, Ms. Rucker confirmed with management that Pure Energy was paying its employees correctly so long as it broke down the day rate into regular and overtime hourly rates and did not exceed twelve-hour shifts. However, until it changed its compensation policies in late 2007 to finally comply with the FLSA, Pure Energy continued to underpay its

-4-

field employees for overtime. Field employees also continued to occasionally work more than twelve hours per day without additional compensation, in violation of Mr. Hurcomb's advice.

In 2007, a group of field employees sued Pure Energy for its violation of the FLSA, based on, inter alia, its failure to pay sufficient overtime. *See Condos v. Pure Energy Servs. (USA), Inc.*, 07-CV-00127-ABJ (D. Wyo. filed June 12, 2007). The district court granted the *Condos* plaintiffs partial summary judgment, finding that Pure Energy had failed to pay the overtime required by the FLSA. Shortly thereafter, Pure Energy and the *Condos* plaintiffs settled.

Plaintiffs in this case are similarly situated to the plaintiffs in *Condos,* and as such, Pure Energy has already admitted it owes Plaintiffs back pay for missed overtime. There were only two issues at summary judgment: first, whether Plaintiffs may be awarded compensatory damages under the extended three-year statute of limitations for Pure Energy's "willful" violation of the FLSA; and second, whether Pure Energy should be required to pay liquidated damages. The district court denied Pure Energy's motion and granted Plaintiffs' motion in part, reserving judgment on the liquidated damages issue until after trial. The parties agreed to have the court rule on liquidated damages based on their existing briefs, and the district court then found Pure Energy liable for the full amount of liquidated damages. This appeal followed.

**DISCUSSION**

## I.

We first consider whether the district court erred in concluding at summary judgment that Pure Energy's violation of the FLSA was willful. We review the district court's decision de novo, applying the same legal standard as the district court and viewing the evidence in the light most favorable to the nonmoving party. *See In re Wal-Mart Stores, Inc.*, 395 F.3d 1177, 1189 (10th Cir. 2005). Summary judgment is proper if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The FLSA generally imposes a two-year statute of limitations unless the defendant's violations are shown to be willful, in which case a three-year period applies. *See* 29 U.S.C. § 255(a). To fall under the three-year limitation, the plaintiff must show that "the employer either knew or showed reckless disregard for the matter of whether its conduct violated the statute." *McGlaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Reckless disregard can be shown through "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 68 (2007) (internal quotation marks omitted).

Although consultation with an attorney may help prove that an employer lacked willfulness, such a consultation is, by itself, insufficient to require a finding in favor of the employer. The court's operative inquiry focuses on the employer's diligence in the face of a statutory obligation, not on the employer's

-6-

mere knowledge of relevant law. *See McGlaughlin*, 486 U.S. at 134-35; *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 129-30 (1985) (airline did not recklessly disregard the Age Discrimination in Employment Act where it sought legal advice, negotiated with union representatives, and then finally implemented a new retirement policy). We have also stated the inverse in our unpublished decisions: that failure to consult with a lawyer is equally insufficient to prove recklessness. *See Fowler v. Incor*, 279 F. App'x 590, 602 (10th Cir. 2008). These principles are consistent with similar "advice-of-counsel" rules in other contexts. *See, e.g.*, *United States v. Wenger*, 427 F.3d 840, 853 (10th Cir. 2005) (in the securities fraud context, "[g]ood faith reliance on counsel . . . is merely one factor a jury may consider when determining whether a defendant acted willfully"); *Takecare Corp. v. Takecare of Oklahoma, Inc.*, 889 F.2d 955, 957 (10th Cir. 1989) (in a trademark infringement action, absent a showing of other factors, "counsel's advice alone will not shield the actor from the consequences of his act") (internal quotation marks omitted).

While not a complete defense, an employer may still assert a good-faith reliance on counsel provided it shows "(1) a request for advice of counsel on the legality of a proposed action, (2) full disclosure of the relevant facts to counsel, (3) receipt of advice from counsel that the action to be taken will be legal, and (4) reliance in good faith on counsel's advice." *Wenger*, 427 F.3d at 853 (internal quotation marks omitted)*; see also United States v. Bush*, 626 F.3d 527, 539 (10th

Cir. 2010) ("An advice-of-counsel instruction requires the defendant to show that he made a full disclosure of all material facts to his attorney and that he then relied in good faith on the specific course of conduct recommended by the attorney.") (internal quotation marks omitted).

We now turn to the evidence available to the district court at summary judgment, which is either undisputed or viewed in the light most favorable to Pure Energy.

In her deposition, Ms. Rucker testified she had been aware of a weekly overtime requirement in the FLSA, but she "was not aware of what the details were, which is why [she] questioned" the use of a day rate and sought advice from Mr. Hurcomb. (Appellant's App. at 101.) She was, however, aware of the forty-hour overtime requirement for Pure Energy's shop employees. (*Id.* at 255, 257.) According to Ms. Rucker, Mr. Hurcomb told her that the company's day rate "was okay as long as we broke it out with a regular and overtime rate," and as long as the employees did not exceed twelve-hour shifts. (*Id.* at 108-09.)

In his deposition, Mr. Hurcomb testified he had some basic exposure to FLSA requirements, but he had never heard of a day rate and did not know what it meant. (*Id.* at 119.) Mr. Hurcomb admitted he did not research day rates or the law relating to the FLSA. (*Id.* at 118.) Nevertheless, he discussed with Ms. Rucker "the requirement that any hours over 40 had to be paid at the overtime rate," and told her that "if they had factored in overtime, that it would be in

compliance with the [FLSA]." (*Id.* at 120.) He did not, however, discuss the forty-hour overtime issue with greater specificity because "[Ms. Rucker] was familiar with it . . . it was a basic concept she was familiar and that I was familiar with." (*Id.* at 122-23.) After their discussion, Ms. Rucker did not request an opinion letter or other form of written advice. (*Id.* at 126.)

After her meeting with Mr. Hurcomb, Ms. Rucker informed several Pure Energy managers via e-mail that she "confirmed with an employment law attorney that we are paying our non-exempt (field) employees correctly using the day rate as long as we document that the day rate includes a regular rate for 8 hours and an overtime rate for the additional time (and as long as we don't exceed 12-hour shifts)." (*Id.* at 114.) Neither Ms. Rucker nor the recipients of Ms. Rucker's e-mail took further action to ensure that Plaintiffs were not working more than twelve hours per day, nor did they take action to ensure that Plaintiffs were compensated for hours worked in excess of forty per week. (*Id.* at 247, 250.)

In fact, Pure Energy did not track its field employees' hours to ensure compliance with the FLSA or with the guidance provided by Mr. Hurcomb. (*Id.* at 163-64.) Field employees often worked more than twelve hours per day, and any overtime Pure Energy did pay was calculated using its erroneous "day rate" without regard for any weekly hours worked in excess of forty. (*Id.* at 178-79, 184.)

In sum, Mr. Hurcomb and Ms. Rucker discussed day rates, but they also

discussed the weekly overtime requirement for employees working more than forty hours per week. Mr. Hurcomb further advised—and Ms. Rucker communicated to her counterparts within the company—that employees must not work more than twelve hours per day. Yet, Pure Energy made no real changes to its compensation policy, nor did it investigate whether its employees were working shifts longer than twelve hours. Indeed, without tracking the number of hours worked by each field employee, it was virtually impossible for Pure Energy to determine whether it was complying with Mr. Hurcomb's advice, let alone the requirements imposed under the FLSA. It is of no consequence that Mr. Hurcomb's advice proved incorrect. Pure Energy did not rely in good faith on its counsel's advice, and thus cannot raise an advice-of-counsel defense.

Pure Energy argues that its purpose in seeking Mr. Hurcomb's advice was to determine the legality of its day rate policy, and with respect to this narrow issue it acted in good faith on Mr. Hurcomb's advice. However, an employer may not selectively listen to and then, in good faith, rely upon only one of many issues discussed simply because it sought discrete legal advice on one potential FLSA violation and viewed all other advice as irrelevant to its original, limited inquiry.

In this case, it does not matter if Ms. Rucker's intent was only to narrowly inquire about Pure Energy's compliance with the FLSA's day rate requirements and not to inquire about the FLSA's weekly overtime requirement. The discussion between Mr. Hurcomb and Ms. Rucker essentially put Pure Energy on

-10-

notice that it must pay weekly overtime for each hour over forty.

Pure Energy failed to compensate Plaintiffs for weekly overtime despite being put on notice. It applied its compensation policy in reckless disregard of FLSA requirements, and is therefore subject to the three-year statute of limitations for damages.

## II.

We next address whether the district court erred in awarding liquidated damages to Plaintiffs, a decision we review for abuse of discretion. *See Dep't of Labor v. City of Sapulpa*, 30 F.3d 1285, 1289 (10th Cir. 1994).

Generally, an employer in violation of the FLSA is liable for both compensatory damages as well as "an additional equal amount as liquidated damages," essentially doubling the plaintiffs' damage award. 29 U.S.C. § 216(b). The purpose behind liquidated damages in the FLSA context lies in "the reality that the retention of a workman's pay may well result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Renfro v. City of Emporia*, 948 F.2d 1529, 1540 (10th Cir. 1991) (internal quotations marks omitted).

However, if the employer can establish that his conduct was both in good faith and based on a reasonable belief that his conduct was not in violation of the FLSA, the court may, in its discretion, award less or no liquidated damages. *See* 29 U.S.C. § 260. While the reasonableness requirement is an objective standard,

the good-faith inquiry is subjective, requiring an "honest intention to ascertain and follow the dictates" of the FLSA. *City of Sapulpa*, 30 F.3d at 1289 (internal quotation marks omitted).

The district court found that, absent evidence to the contrary, Pure Energy subjectively intended to adhere to the FLSA, and thus acted in good faith. However, citing its prior analysis on the issue of willfulness, the district court found that Pure Energy's conduct was unreasonable and subjected Pure Energy to liquidated damages.

Whether or not the district court correctly found that Pure Energy acted in good faith, we find no abuse in the court's finding of unreasonableness. The same facts that support the district court's conclusion that Pure Energy's failure to fully compensate Plaintiffs' weekly overtime was willful also support the district court's conclusion that Pure Energy's belief that it was complying with the FLSA was unreasonable. Moreover, even if the district court had found Pure Energy acted reasonably, it retained discretion to award liquidated damages. *See City of Sapulpa*, 30 F.3d at 1289.

## CONCLUSION

The judgment of the district court is AFFIRMED.