**UNITED STATES of America,**
**Plaintiff,**

v.

**PHOENIX FUEL CORPORATION,**
**et al., Defendants.**

**Case No. 11–CV–132–F.**

United States District Court,
D. Wyoming.

Oct. 18, 2012.

Mark A. Klaassen, U.S. Attorney's Office, Cheyenne, WY, Rickey Watson, Department of Justice, Washington, DC, for Plaintiff.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST CHARTER AMERICA AND CHARLES LITTLE

NANCY D. FREUDENTHAL, Chief Judge.

This matter is before the Court on Plaintiff's motion for summary judgment. With this motion, Plaintiff, United States of America ("United States"), seeks summary judgment as to two of the various Defendants in this case, Charter America, Inc. ("Charter") and Charles Little ("Little").[1] The United States argues these two Defendants are responsible for feder-

---

1. The United States also filed a separate motion for summary judgment against Defendant Phoenix Fuel Corporation. Defendant Phoenix Fuel Corporation did not contest this motion. Accordingly, the Court granted that motion on October 16, 2012.

al corporate income tax liabilities totaling $756,742.86, plus statutory additions and interest. In support of its motion, the United States asserts (1) Charter is responsible for the liabilities as a shareholder who received distributions from a liquidating corporation, and (2) Little is responsible because those distributions were approved by him in violation of Wyoming law. In addition, the United States claims the transfers to Charter were fraudulent as to the United States. Based on the pleadings and supporting evidence before it, the Court finds genuine disputes exist as to various material facts., Thus, the United States' motion for summary judgment is DENIED.

## Background

The United States brought this lawsuit to reduce to judgment federal income tax assessments against Phoenix Fuel Corporation ("PFC"), an aviation fuel distribution company formerly operating out of Sheridan, Wyoming. PFC was originally incorporated in Texas, but filed Articles of Domestication with the Wyoming Secretary of State on March 17, 1998. The federal tax liabilities at issue arose as a result of PFC's sale of certain assets to another entity, Phoenix Fuel LLC, in late 2005. During this period, Defendant Charles Little served as both a director and as Chief Financial Officer of PFC. Defendant Thomas Perkins served as PFC's President.

Over the course of several transactions from 2001 to 2005, Charter Aviation, Inc. ("Charter") became PFC's primary shareholder.[2] At the time, Charter and PFC shared common leadership. In addition to his positions with PFC, Mr. Little served

as Charter's Chief Financial Officer. Charter was wholly owned by another Defendant in this case, Anthony Romeo. Mr. Romeo was also a director of PFC.

In the fall of 2005, Mr. Romeo met with a third party named Robert Lyle, who expressed an interest in purchasing Charter's interest in PFC. The parties disagree as to the specifics of the resulting agreement between Mr. Romeo and Mr. Lyle. According to the United States, the men agreed to accomplish the transfer of Charter's ownership interest in PFC through a purchase of all of PFC's assets by a company to be formed by Lyle (ultimately, Phoenix Fuel LLC). These proceeds would in turn be used to redeem Charter's stock holdings in PFC. Defendants Charter and Little, however, claim they were ignorant of the plans regarding the particular mechanism by which Mr. Lyle would purchase Charter's PFC shares.

Regardless, in December of 2005, Charter executed a stock redemption agreement for its ownership interest in PFC. Under the terms of this agreement, PFC agreed to redeem Charter's shares for the sum of $1,120,000.00. Around this time, the only other PFC shareholder, Defendant Tradewind (owned by Defendant Perkins), had transferred all but one of its shares to Charter, pursuant to a request from Mr. Lyle's representatives. Accordingly, at the time PFC redeemed Charter's shares, the company held 2,499 of the 2,500 issued shares of common stock in PFC. The stock redemption agreement also provided PFC would purchase a contract between Charter and the Department of Defense for $280,000.00.[3] The

---

**2.** On December 10, 2001, Charter purchased 40% of the active shares in Phoenix. On April 11, 2002, Charter purchased another 20% of the shares in Phoenix. On July 1, 2005, Charter purchased another 20% of

Phoenix's shares, bringing Charter's ownership interest in Phoenix to 80%.

**3.** The stock redemption agreement refers to Charter's contract with the Department of

closing on the redemption of Charter's PFC shares pursuant to the parties' stock redemption agreement took place on or around December 30, 2005. Just prior, Mr. Romeo and Mr. Little resigned as directors of PFC.

Meanwhile, one or more of the various Defendants in this case approved the aforementioned asset purchase agreement with Mr. Lyle.[4] In light of this agreement, Mr. Lyle's new entity, Phoenix Fuel LLC, purchased all of PFC's assets for $1,400,000.00. The parties disagree as to whether the transfer under the asset purchase agreement occurred contemporaneously with the stock redemption agreement or afterwards. The timing was undoubtedly close because, as Defendants Charter and Little admit, Phoenix Fuel LLC took over PFC's business on December 30, 2005. Thereafter, PFC incurred federal corporate income tax liabilities for the tax period ending June 30, 2006, as a result of the sale of its assets to Phoenix Fuel LLC.

While the parties disagree as to the exact amount of taxes owed in this case, it is generally uncontested that PFC incurred significant liabilities, which remain unpaid. According to the most recent assessment by the United States, the outstanding income tax liabilities of PFC, including certain penalties and assessed interest, is $759.742.86.

### Standard of Review

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Mata*

*v. Anderson,* 635 F.3d 1250, 1252 (10th Cir.2011). In determining whether summary judgment is appropriate, the Court views the evidence and draws all reasonable inference there from in the light most favorable to the nonmoving party. *Mumby v. Pure Energy Servs. (USA), Inc.,* 636 F.3d 1266, 1269 (10th Cir.2011).

To survive a motion for summary judgment, there must be more than "[t]he mere existence of a scintella of evidence in support of the [nonmoving party's] position ... there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231–32 (10th Cir.2001). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998). The burden of persuasion rests squarely on the moving party. *Trainor v. Apollo Metal Specialties, Inc.,* 318 F.3d 976, 980 (10th Cir.2002).

### Discussion

The United States presents several arguments in support of its motion for summary judgment. First, the United States claims Defendant Charter is responsible for PFC's federal income tax liabilities as a shareholder that received assets during the liquidation of PFC. The United States

Defense as "Phoenix Fuel Corporation—Columbia" or "PFC—Columbia."

4. Mr. Perkins was the only defendant who signed the asset purchase agreement on behalf of PFC. However, the stock redemption

agreement makes reference to the "sale of the Purchased Assets of the Corporation" by "Newco"—*i.e.,* Phoenix LLC. The stock redemption agreement was signed by Mr. Little, among others.

points to the Wyoming Business Corporation Act as the basis for this argument.[5]

## I. Charter's Liability Under Wyo. Stat. Ann. § 17–16–1407

The Tenth Circuit has recognized that "[c]reditors of a dissolved corporation may follow distributed assets into the hands of stockholders and require them to respond each to the extent of their distributive share." *Gaskins v. Bonfils,* 79 F.2d 352, 355 (10th Cir.1935). The United States correctly identifies Wyoming Statute § 17–16–1407 as the means by which this principle is enforced in Wyoming.

Wyoming Statute § 17–16–1407 provides a process for the resolution of claims that are not "known" at the time of a corporation's dissolution. These claims include "contingent" liabilities and claims "based on an event occurring after the effective date of dissolution." *See* Wyo. Stat. Ann. § 17–16–1406 (defining claims under the section pertaining to "known" claims). Under the terms of the statute, such claims may be barred if a corporation gives proper notice of its dissolution and the claimant chooses not to pursue its claim. If no notice is given by the corporation, however, the claim is not barred. Instead, the claim "may be enforced ... if the assets have been distributed in liquidation, against a shareholder of the dissolved corporation to the extent of his pro rata share of the claim or the corporate assets distributed to him in liquidation, whichever is less ..." Wyo. Stat. Ann. § 17–16–1406(d)(ii). The statute limits a shareholder's liability for all claims to the "total amount of assets distributed to the shareholder." *Id.*

The Court believes the United States has met its initial burden of producing evidence which, if uncontroverted, would entitle it to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the outset, the United States asserts it is a creditor or claimant as contemplated by federal and state law.[6] Further, since it is undisputed PFC did not publish a notice of its dissolution, the United States argues it should be able to enforce its claim against all shareholders who received assets in the corporate liquidation of PFC, with Charter being one such shareholder. According to the United States, these assets include the $1,400,000.00 Charter received as a result of PFC's sale of its assets to Phoenix Fuel LLC ("Phoenix LLC"). After this distribution, the United States claims the assets of PFC were "completely liquidated." As such, the plain language of the statute—which, the United States correctly notes features no requirement of fraudulent intent—dictates that Charter assume responsibility for PFC's debt.

Yet in considering Defendant Charter's response and supporting evidence, the Court cannot award summary judgment for the United States on this basis. Viewing the evidence in the light most favorable to Charter, there remain genuine issues of material fact essential to the proper disposition of this argument. The Court will not adopt the role of fact-finder in deciding these issues on summary judgment.

As a preliminary matter, the Court notes the distinction between the concepts of dissolution and liquidation in Wyoming.

---

5. The parties do not address the issue of whether Wyoming law applies in this case. However, the Court agrees Wyoming Statutes should govern the analysis of the potential

responsibility of Defendants Charter and Little.

6. Defendants Charter and Little do not dispute this assertion.

Under the Wyoming Business Corporation Act, a "dissolved corporation" means one "whose articles of dissolution have become effective and *includes* a successor entity to which the remaining assets of the corporation are transferred subject to its liabilities for purposes of liquidation." Wyo. Stat. Ann. § 17–16–1403 (emphasis added). This language is illustrative rather than limiting. *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168, 123 S.Ct. 748, 154 L.Ed.2d 653 (2003)(stating that the enumeration of one case will generally not be read to exclude others); *Gray v. Powell*, 314 U.S. 402, 416, 62 S.Ct. 326, 86 L.Ed. 301 (1941)(noting a statutory definition that "includes" a particular situation should not be interpreted to limit the definition to the inclusion). While a "dissolved corporation" may include those passing assets to a successor entity for purposes of liquidation, this is not the only mechanism of dissolution contemplated by the Wyoming legislature. Otherwise stated, a corporation's assets need not be liquidated in order for that corporation to be dissolved within the meaning of Wyoming Statute § 17–16–1403. Nonetheless, the particular section extending liability to shareholders requires that the dissolved corporation's assets have in fact been distributed to shareholders "in liquidation." Wyo. Stat. Ann. § 17–16–1407.

In light of the above statutory construction, the Court must consider whether PFC was in fact a dissolved corporation, and if so, whether its assets were distributed to shareholders (here, Charter) in liquidation. The parties do not address the independent question of whether PFC was a dissolved corporation at the time of the stock redemption and/or asset purchase, or any time thereafter. The United States instead presumes PFC was dissolved because its assets were liquidated (a logical conclusion, but one based on disputed facts, as discussed below). Charter, in turn, does not address the question of whether PFC was dissolved but merely argues PFC's assets were not liquidated. This point does not bear on PFC's corporate status; again, a Wyoming corporation may be dissolved even if its assets are not transferred to a successor entity for purposes of liquidation. Neither party has addressed whether PFC filed articles of dissolution with the Wyoming Secretary of State, a fact which appears to the Court to be of some consequence.

Regardless, Charter's pleadings and attached filings call into question whether PFC's assets were "distributed to [Charter] in liquidation," as required by § 17–16–1407(d)(ii). Charter claims none of PFC's assets were liquidated but rather transferred to Phoenix LLC, so the LLC could operate as a continuation of PFC.[7] This fact is important as the Tenth Circuit has observed a business is not in fact "liquidated" when its operations are "resumed by [a] new corporation as a continuation of going concern." *Babcock v. Phillips*, 372 F.2d 240, 243 (10th Cir.1967). In support, Charter points to the asset purchase agreement between PFC and Phoenix LLC, in which the LLC agreed to assume certain liabilities of PFC, including federal income tax liability in the amount of $847,768.00. Charter also provides evidence Phoenix LLC took over PFC's business, customer base, employees, physical address, and phone number. These points undermine the United States' assertion that Charter received distributions from the liquidation of PFC's assets.

Charter also disputes the United States' characterization of the timing involved in

7. As such, Charter argues, Phoenix LLC is the party responsible for "all the liabilities of the selling entity as a matter of law."

the closing of the stock redemption and asset purchase agreements. While the United States claims these two events were interrelated and occurred "contemporaneously," Charter asserts the stock redemption occurred *prior* to PFC's sale of its assets to Phoenix LLC; accordingly, Charter was not a shareholder by the time assets were distributed, assuming PFC was in fact dissolved. This assertion by Charter is somewhat dubious. Based on the dates disclosed in the parties' pleadings, it appears to the Court these two events occurred within days of each other, if not on the same day. Further, the fact that Charter received $1,400,000.00 in its redemption agreement and that Phoenix LLC paid $1,400,000.00 for PFC's assets, strongly suggests the asset purchase price was effectively forwarded to Charter.

However, Charter does provide evidence to counter this assumption and points to documents indicating no monies were transferred directly to Charter from PFC. Therefore, Charter at least raises the possibility that these two transactions were more independent than the numbers and the documents themselves might suggest. Viewing the evidence in the light most favorable to Charter, the Court is not prepared to draw a conclusion that Charter was in fact a shareholder at the time of the asset purchase by Phoenix LLC. By the same logic, there exists a genuine issue as to whether "assets" were distributed to Charter; this would arguably not be the case if the stock redemption preceded the asset purchase.

For these reasons, the Court rejects the United States' arguments under § 17–16–1407.

## II. Little's Liability Under Wyo. Stat. Ann. § 17–16–833(a)

The United States next argues it is entitled to summary judgment because

Charles Little voted for an improper distribution and is therefore responsible for the tax liabilities of PFC as a matter of law. In support of this argument, the United States points to Wyoming Statute § 17–16–833(a), which states in relevant part:

"A director who votes for or assents to a distribution in excess of what may be authorized and made pursuant to … Wyo. Stat. Ann. § 17–16–1409(a) is personally liable to the corporation for the amount of the distribution that exceeds what could have been distributed without violating [that statute] … if the party asserting liability establishes that when taking the action the director did not comply with Wyo. Stat. Ann. § 17–16–830."

Wyo. Stat. Ann. § 17–16–833(a). Section 1409(a) requires directors "cause the dissolved corporation to discharge or make reasonable provisions for the payment of claims and make distributions of assets to shareholders after payment or provision for its claims." Wyo. Stat. Ann. § 17–16–1409(a). Section 830(a), in turn, states that a member of the board of directors "shall act … in a manner he reasonably believes to be in or at least not opposed to the best interests of the corporation." Wyo. Stat. Ann. § 17–16–830. The United States claims Mr. Little (as a director of PFC) is personally liable for PFC's tax debt under § 17–16–833(a), because he assented to distributions to Charter without first considering or providing for the payment of federal income taxes.

In reaching this conclusion, the United States first argues Wyoming Statute § 17–16–833(a) provides a remedy for creditors of dissolved corporations, even though the statute only states a director may be liable to the *corporation*. There is no Wyoming

case law addressing this precise issue. While the United States provides a convincing argument in favor of allowing creditors to sue under this section, the Court need not address this question at present, as the motion for summary judgment fails on other grounds.

■ Once again, viewing the evidence in the light most favorable to Defendant Little, genuine issues of material fact essential to the proper disposition of this argument remain. The Court has already addressed the first of these issues. As stated above, it is not clear to the Court that the redemption of Charter's stock under the stock redemption agreement was in fact a "distribution of assets to shareholders" as contemplated by § 17–16–833(a) (and more specifically, § 17–16–1409(a)). If, as Defendants argue, the stock redemption occurred prior to and separate from the asset purchase by Phoenix LLC, then the monies transferred to Charter simply cannot be considered a distribution of assets. While the Court has already noted its doubt that the stock redemption and asset purchase agreements were as removed in time and purpose as Defendants suggest, it cannot rule conclusively that the two agreements constituted a single, contemporaneous transaction at this time.

Second, even assuming the redemption of Charter's stock constituted a "distribution of assets" within the meaning of § 17–16–833(a), it is not clear from the record Mr. Little acted in violation of that statute. Mr. Little: strongly denies any substantive involvement in the asset purchase agreement with Phoenix LLC. Specifically, Mr. Little claims he never saw or signed the asset purchase agreement in any form, and in fact resigned as a PFC director

prior to the sale of assets to the LLC. Since it was this sale specifically that gave rise to PFC's federal income tax liability in this case, it is thus a matter of dispute whether Mr. Little even had knowledge of the "claim" at issue at the time of the alleged asset distribution to PFC's shareholders (*i.e.* Charter). Viewing the evidence in the light most favorable to Mr. Little, the Court is not prepared to hold the Defendant responsible for failing to make "reasonable provision" for a claim of which he may have lacked substantive knowledge and which may have arisen only after his resignation.

### III. Charter's Liability Under Wyo. Stat. Ann. § 34–14–105 and § 34–14–107 [8]

Lastly, the United States argues the conveyance of money to Charter was fraudulent as to the United States and that Charter is therefore responsible for the amount of this conveyance. The United States raises its final argument under Wyoming Statutes §§ 34–14–105 and 34–14–107. Under § 34–14–105,

> "[e]very conveyance made and every obligation incurred by a person *who is or will be thereby rendered insolvent* is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation incurred *without a fair consideration.*"

Wyo. Stat. Ann. § 34–14–105 (emphasis added). Similarly, § 34–14–107 states,

> "[e]very conveyance made and every obligation incurred *without fair consideration* when the person making the conveyance or entering into the obligation intends or believes that he will *incur debts beyond his ability to pay as they*

---

**8.** Repealed by Wyoming's adoption of the Uniform Fraudulent Transfer Act, July 1, 2006.

*mature,* is fraudulent as to both present and future creditors."

Wyo. Stat. Ann. § 34–14–107 (emphasis added).

The absence of consideration is necessary under both of these sections in order for the conveyance to be deemed fraudulent. By statute, "fair consideration" is given for property "when in exchange for such property, or obligation, as a fair equivalent therefore, and in good faith, property is conveyed or an antecedent debt is satisfied." Wyo. Stat. Ann. § 34–14–104. The United States claims the conveyance of money to Charter was made without such consideration because the monies received by Charter "had no connection to the value of the business." According to the United States, the amount transferred "was simply the amount demanded by Charter's president and CEO in order to secure his consent to the transfer of the assets." *Id.*

 Through its pleadings and supporting evidence, the United States has not established the conveyance to Charter was made without fair consideration as a matter of law. Specifically, the United States has not provided sufficient documentation indicating the $1,120,000.00 redemption payment received by Charter in exchange for its PFC holdings was not a fair equivalent to the value of its PFC stock or that the $280,000.00 was not a fair equivalent to the value of the Columbia contract. The United States asserts the $1,120,000.00 had "no connection to the value of the business," pointing to the fact the parties had at one time agreed to a higher redemption price. Furthermore, the United States notes there was no increase in price, despite Charter's last-minute acquisition of nearly all of PFC's remaining stock from Tradewind (a 20% increase in holdings). Yet these facts alone do not support the conclusion fair consideration

was lacking. While it may indeed appear suspect that the stock redemption price dropped, and then remained static despite an apparent increase in holdings, the United States has simply failed to establish the monies conveyed to Charter were not a fair equivalent to the value of its stock. Further, while the United States describes "PFC–Columbia" as a "non-existent asset," this does not comport with its own statement that PFC–Columbia (while perhaps misleading in name) did in fact refer to an actual contract with the Department of Defense. And finally, even if the amount transferred to Charter was based on the amount demanded by Charter's president, this does not necessarily mean that price was unfair. In short, because the United States has not stated how much Charter's property was worth, it is impossible for this Court to decide whether the money conveyed was a "fair equivalent" in value. *See In re Richardson,* 23 B.R. 434, 443 (Bankr.Utah, 1982) (noting in the bankruptcy context that property value is a material question of fact because its resolution is an essential predicate to the legal question of reasonable equivalence in value).

The Court will not address the remaining requirements of §§ 34–14–105 and 34–14–107 as the United States has not presented facts, which, if uncontroverted, would entitle it to judgment as a matter of law on these basis.

### Conclusion

For the aforementioned reasons, the Court concludes the United States is not entitled to judgment as a matter of law on any of its presented claims.

IT IS ORDERED Plaintiff's Motion for Summary Judgment is DENIED.