Cheryl **FOLLMAN**, individually and on behalf of all others similarly situated, Plaintiff,

v.

**WORLD FINANCIAL NETWORK NATIONAL BANK,** Defendant.

No. 10–CV–1921 (SLT)(CLP).

United States District Court, E.D. New York.

July 24, 2013.

Harley J. Schnall, Law Office of Harley J. Schnall, Brian L. Bromberg, Michael Noah Litrownik, Bromberg Law Office, P.C., New York, NY, for Plaintiff.

Michael John Tiffany, Leader & Berkon LLP, New York, NY, Mark Levin, Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

TOWNES, District Judge:

This case involves a dispute over what disclosures are required for certain open end credit accounts under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* Cheryl Follman ("Plaintiff") held a Victoria's Secret credit card issued by World Financial Network National Bank ("Defendant"). On April 28, 2010, Plaintiff filed a putative class action on behalf of herself and all others similarly situated, alleging that Defendant violated TILA by providing inadequate initial disclosures in its credit card agreements. On July 21, 2011, Defendant moved for summary judgment on Plaintiff's individual claim. The parties have agreed to defer class proceedings pending determination of Defendant's motion. For the reasons stated below, Defendant's motion is granted.

### I. STANDARD OF REVIEW

Summary judgment should be granted "where the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." *Burt Rigid Box, Inc. v. Travelers Property Cas. Corp.,* 302 F.3d 83, 90 (2d Cir.2002) (citing FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). When deciding a summary judgment motion, a trial judge is not required to make factual findings. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986). Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.*

The facts here are not in dispute and, notwithstanding Plaintiff's assertion, the parties present only the following questions of law: (1) whether Plaintiff's claim under TILA is time-barred, (2) whether Defendant's account-opening disclosures violated TILA and Regulation Z, and (3) whether the alleged violation entitles Plaintiff to statutory damages under TILA. Because, for reasons described more fully below, the court concludes that Plaintiff's claim is untimely, it grants Defendant's motion for summary judgment on that basis and does not reach the remaining legal issues.

### II. THE STATUTORY FRAMEWORK

■ Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a); *see Beach v. Ocwen Fed. Bank,* 523 U.S. 410, 412, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998). In enacting TILA, Congress delegated authority to the Federal Reserve Board of Governors to promulgate implementing regulations and interpretations, known as Regulation Z. *See* 15 U.S.C. § 1604(a); *see also* 12 C.F.R. § 226 et seq.[1] Regulation Z provides, in part, that "[t]he creditor shall furnish the

---

1. All citations herein are to the versions of TILA and Regulation Z in effect in 2009 when Defendant issued the relevant disclosures to Plaintiff. The court notes, however, that all provisions cited appear in the current versions of the statute and regulation, albeit with different enumeration.

initial disclosure statement required ... before the first transaction is made under the plan." 12 C.F.R. § 226.5(b)(1) (2008). "TILA does not require that the consumer illustrate that [she] has suffered any actual damage, but provides for a penalty. Congress sought to vest considerable enforcement powers in consumers as 'private attorneys general,' who by suing creditors for violations, can achieve widespread compliance without government intervention." *Aldrich v. Upstate Auto Wholesale of Ithaca, Inc.*, 564 F.Supp. 390, 394 (N.D.N.Y. 1982); *Diaz v. Paragon Motors of Woodside, Inc.*, 2007 WL 2903920, at *7 (E.D.N.Y. Oct. 1, 2007) (noting that TILA "creat[es] a system of 'private attorney generals' to aid in effective enforcement of the substantive statute.") (citation omitted).

Generally, there are two types of consumer credit transactions regulated by TILA: open end credit plans and closed end credit plans. The term "open end credit plan" denotes a plan "under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." 15 U.S.C. § 1602(i). Closed end credit plans, on the other hand, contemplate a single transaction, where "the finance charge is divided into the term of the loan and incorporated into the time payments and thus the rate is computable by the consumer from the time he receives his first billing." *Goldman v. First Nat'l Bank of Chicago*, 532 F.2d 10, 19 (7th Cir.1976). A credit card account such as the one at issue here is an example of an open end consumer credit plan. *McAnaney v. Astoria Fin. Corp.*, 2008 WL 222524, at *4 (E.D.N.Y. Jan. 25, 2008).

Disclosures for open end consumer credit plans are governed by section 1637

of TILA. In addition to specifying the disclosures that creditors are required to make, section 1637 mandates that creditors issue those disclosures to the person to whom credit is to be extended "[b]efore opening any account under an open end consumer credit plan." 15 U.S.C. § 1637(a). TILA permits consumers who have not received the required disclosures to initiate an action for civil damages, but requires that they do so within one year "from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). However, the "date of the occurrence of the violation" can differ depending on the type of consumer credit transaction at issue. In a closed end consumer credit plan, the disclosure violation occurs no later than the date of the closing of the loan—the date on which the law requires the disclosure to be made. *See McAnaney*, 2008 WL 222524, at *4. Although courts have not addressed precisely when a violation occurs in open end consumer credit plans, when a TILA claim arises out of the imposition of a finance charge in such a plan, courts have typically held that the statute of limitations runs from the date on which the finance charge is first imposed, rather than on the date the disclosures are made. *See Goldman*, 532 F.2d at 22.

### III. BACKGROUND

The parties have submitted a joint statement ("Joint SOF") setting forth the following undisputed facts, which are construed in a light most favorable to Plaintiff, the non-moving party. On March 1, 2009, Plaintiff applied for a Victoria's Secret credit card while at a Victoria's Secret retail location. At that time, she received her first copy of the credit card agreement which contained Defendant's initial disclosures. (Joint SOF ¶ 1.) Although Defendant initially declined to approve Plaintiff's credit card application

due to a fraud alert on her credit report, it ultimately verified Plaintiff's information and approved her application on March 27, 2009. (*Id.* ¶¶ 3–4.)

On March 30, 2009, Defendant mailed to Plaintiff a Victoria's Secret credit card, along with a second copy of the credit card agreement, which Plaintiff received on or before April 6, 2009. (*Id.* ¶ 5.) Plaintiff activated her credit card by phone on April 6, 2009. (*Id.* ¶ 6.) On April 28, 2009, Plaintiff used her Victoria's Secret credit card to make her first and only purchase of $28.00 at the Victoria's Secret store located in the King's Plaza Shopping Center in Brooklyn, New York. (*Id.* ¶ 7.) Plaintiff paid the $28.00 credit card balance in full and at no time incurred any finance charges. (*Id.* ¶ 8.)

On April 28, 2010, Plaintiff filed this action, alleging that Defendant's disclosures in Paragraph 13.c of the credit card agreement were deficient because they failed to include information that an increase in the annual percentage rate could lead to an increase in the minimum payment that the consumer would be required to make.

## IV. DISCUSSION

The threshold issue here is whether Plaintiff's action brought pursuant to section 1637(a) of TILA is timely under TILA's statute of limitations. TILA mandates that actions be filed within one year "from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Regulation Z, which is relevant to when the disclosures required under TILA are due, provides that "[t]he creditor shall furnish the initial disclosure statement required . . . before the first transaction is made under the plan." 12 C.F.R. § 226.5(b)(1) (2008). There is no real dispute that the term "violation," as used in section 1640, refers to a defendant's failure to properly disclose information required by section 1637(a). Thus, any violation arising from Defendant's failure to include certain information in its disclosures as required by section 1637(a) occurred when Defendant made those disclosures to Plaintiff. Drawing as it must all reasonable inferences of fact in favor of Plaintiff, the court assumes that Defendant made its disclosures to Plaintiff on April 6, 2009, the date Plaintiff activated the credit card accompanying the disclosures and therefore the latest point at which she could have received them. Plaintiff's law suit, filed more than one year later, is accordingly untimely.[2]

Despite that any violation of section 1637(a) occurred when Defendant made its disclosures to Plaintiff, Plaintiff argues that because Regulation Z permits a defendant to disclose the required information at any point before a credit transaction is made, the regulation necessarily establishes a credit transaction as a condition precedent that delays accrual of an action under TILA. Plaintiff's argument is unpersuasive. As indicated, the provision of Regulation Z at issue states simply that "[t]he creditor shall furnish the initial disclosure statement required . . . before the first transaction is made under the plan." 12 C.F.R. § 226.5(b)(1) (2008). Plaintiff's assertions notwithstanding, Regulation Z merely establishes a window during which a creditor may issue its disclosures. True, Regulation Z permits a creditor to issue its disclosures *no later* than when the first transaction occurs. There is nothing in

2. The court notes that neither party meaningfully argues that the violation occurred when Defendant sent its disclosures to Plaintiff but before Plaintiff actually received them. Given that Plaintiff's action would be untimely using either date, the court makes no determination as to which date is correct for purposes of the statute of limitations and will use the later date of April 6, 2009 for purposes of deciding the current motion.

this provision, however, that in any way suggests it was designed to prevent a consumer from commencing a lawsuit against a defendant who, prior to a credit transaction, has issued disclosures that, on their face, are alleged to have violated section 1367(a).

The court's reading of section 1640(e) and Regulation Z is consistent with section 1640(a), TILA's damages provision. Section 1640(a) specifically predicates a card issuer's liability under 15 U.S.C. § 1637(c) or (d) on a cardholder's "use" of the credit card. *See* 15 U.S.C. § 1640(a) (providing that "[i]n connection with the disclosures referred to in subsection (c) or (d) of section 1637 of this title, a card issuer shall have a liability under this section *only to a cardholder who pays a fee . . . or who uses the credit or charge card.*") (emphasis added). In some contrast, the statute mentions no such condition regarding liability for creditors under 15 U.S.C. § 1637(a), the provision at issue here, or section 1637(b). *See id.* (providing that "[i]n connection with the disclosures referred to in subsections (a) and (b) of section 1637 of this title, a creditor shall have a liability determined . . . only for failing to comply with the requirements of [various provisions including 1637(a)] or for failing to comply with disclosure requirements under State law for any term or item that the Bureau has determined to be substantially the same in meaning . . . as any of the terms or items referred to in section 1637(a) of this title."). Plaintiff disputes the relevancy of this distinction, arguing that Congress's failure to explicitly impose card usage as a condition for liability to attach for violations 1637(a) does not necessarily mean no such requirement exists. Perhaps not, but the absence of such a condition, which Congress expressly included in the same paragraph regarding sections 1637(c) and (d), provides further support for the conclusion that a credit transaction is not a condition precedent to holding a creditor liable for violating section 1637(a).

In addition, the court finds the Seventh Circuit's decision in *Goldman v. First Nat'l Bank of Chicago* instructive. In *Goldman*, the defendant bank had issued certain disclosures in an open end credit transaction regarding the calculation of a finance charge. Following imposition of the charge, the disclosures were determined to be inaccurate. For a period of time, the plaintiff paid the balance on his billing statements in full, and therefore did not incur any finance charges. Over a year after both the bank's issuance of the initial disclosures and the first credit transaction, however, the plaintiff incurred his first finance charge. At that time, the plaintiff realized that the finance charge was calculated in a manner different from the method outlined in the disclosures and initiated a lawsuit against the defendant bank. The defendant argued that because the violation occurred at the time its disclosures were made, the plaintiff's suit was untimely. *Goldman*, 532 F.2d at 13. The Seventh Circuit disagreed and concluded instead that the statute of limitations began to run when the finance charge was imposed. *Id.* at 22.

■ Although the Seventh Circuit in *Goldman* did not address the specific question presented here—whether the statute of limitations in a TILA action begins to run when the bank's disclosures are made or when the consumer makes her first credit transaction—the court drew an important distinction between those situations where "no disclosure was made" and those where there has been "inaccurate, partial or misleading disclosure." *Id.* at 17. In concluding that the limitations period did not begin to run until the finance charge was imposed, the

Seventh Circuit emphasized the special circumstances attendant to *inaccurate* disclosures. As the court noted, "[t]he imposition of a finance charge under an open end credit plan in which an inaccurate disclosure has been made is a necessary condition for the assessment of liability since it is the charge against which the accuracy of the disclosure must be measured." *Id.* at 21. The court continued, "until a finance charge is levied the debtor has no cause for complaint since there has been no action inconsistent with the inaccurate disclosure." *Id.* In other words, when a specific disclosure, standing alone, appears otherwise accurate and sufficient, and is only later revealed to be inaccurate through a later act taken by the defendant, the limitations clock is not deemed to begin to run until that later action occurs.

■ In contrast, in instances where, as here, a defendant is alleged to have entirely failed to include certain required information in its initial disclosures, the statute of limitations is more appropriately deemed to begin to run from the time the defendant makes its disclosures. As the Seventh Circuit noted in *Goldman,* in situations where the violation concerns the *omission* of certain information, the violation is "immediately apparent," and thus, a "debtor would be cognizant of [the violation] *on the day the credit disclosure forms were given to him.*" *Goldman,* 532 F.2d at 17, 20 (emphasis added).[3] Indeed, Plaintiff did not need to await any further action by Defendant to discern the alleged insufficiency of Defendant's disclosures, and in fact, filed her lawsuit before any such action was taken on Defendant's part. Accordingly, Plaintiff was required to initiate her lawsuit within one year of Defendant's disclosures and her failure to do so is fatal to her claims. This determination is "consistent with those cases which designate as the time from which a statute of limitations begins to run the date at which the last significant event necessary to make the claim suable occurs." *Id.* at 22 (citing *United States v. Wurts,* 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932 (1938)).

Finally, the court notes that Plaintiff's position is inconsistent with the general purpose of statutes of limitations: to "protect defendants against stale or unduly delayed claims." *Credit Suisse Sec. (USA) LLC v. Simmonds,* —— U.S. ——, 132

---

**3.** Defendant, relying on the official staff commentary to section 226.5(b)(1) of Regulation Z, asserts that Plaintiff misconstrues the term "transaction" as it used in that provision. Defendant argues that even if a transaction were necessary, the commentary to Regulation Z clarifies that section 226.5(b)'s admonition that disclosures must be made "before the first transaction," actually requires delivery of the initial disclosures "before the consumer becomes obligated on the plan." 12 C.F.R. Part 226 Supplement I, 226.5(b)(1)–1. Defendant asserts that because Plaintiff was obligated on the plan at the time she opened her account and signed the credit card agreement, any "transaction" requirement under section 226.5(b)(1) was satisfied here. (Defendant's Memorandum of Law at 9.) However, the official commentary to Regulation Z that Defendant relies on indicates that a consumer becomes obligated, not merely by opening an account, but when he or she makes the first purchase, receives the first advance, or pays any fees or charges under the plan other than an application fee or refundable membership fee. *See also* 12 C.F.R. Part 226 Supplement I, 226.5(b)(1)–1; 1 COMPLIANCE EXAMINATIONS UPDATE FOR FINANCIAL INSTITUTIONS, ch. 4.1 (James H. Pannabecker, ed.) (current through the February 2013 update). Accordingly, Plaintiff appears correct that no transaction occurred here until she made her first purchase on April 28, 2009. In any event, the court need not decide this issue given its conclusion that a transaction is not a condition precedent to filing suit under TILA. Even assuming then that Plaintiff had not yet engaged in a transaction at the time the alleged violation occurred, such fact does not alter the court's determination that her action is untimely under 15 U.S.C. § 1640(e).

S.Ct. 1414, 1420, 182 L.Ed.2d 446 (2012) (quoting *John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 133, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008)). Congress here included a specific statute of limitations in section 1640, providing that civil actions under the statute be instituted one year "from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Plaintiff's proffered interpretation of the statute, however, would essentially enable consumers to set their own statute of limitations. If Plaintiff's reading of the statute were correct, in situations where a creditor has issued facially deficient disclosures and a consumer is admittedly aware of the deficiencies, that consumer would nonetheless be able to indefinitely delay an action and effectively toll the statute of limitations merely by declining to engage in a transaction. Under such a scheme, a creditor could find itself facing a lawsuit years after the allegedly defective disclosure occurred. This would appear to fly in the face of Congress's intent in including in the statute a limitations period and Plaintiff points to no language—in the statute or otherwise—that compels this result. Accordingly, the court finds Plaintiff's attempt to place control of the limitations clock exclusively in the hands of plaintiffs unavailing and inconsistent with the language and purpose of the statute.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's claim is untimely and Defendant's motion for summary judgment [34] is GRANTED. The Clerk of Court is directed to enter judgment in accordance with this memorandum and order and close this case.

SO ORDERED.