(Slip Opinion) OCTOBER TERM, 2011 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CREDIT SUISSE SECURITIES (USA) LLC ET AL. *v.* SIMMONDS

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 10–1261.   Argued November 29, 2011—Decided March 26, 2012

Under §16(b) of the Securities Exchange Act of 1934, a corporation or
security holder of that corporation may sue corporate insiders who
realize profits from the purchase and sale, or sale and purchase, of
the corporation's securities within any 6-month period.  The Act pro-
vides that such suits must be brought within "two years after the
date such profit was realized."  15 U. S. C. §78p(b).

   In 2007, respondent Simmonds filed numerous §16(b) actions,
claiming that, in underwriting various initial public offerings in the
late 1990's and 2000, petitioners and others inflated the stocks' af-
termarket prices, allowing them to profit from the aftermarket sales.
She also claimed that petitioners had failed to comply with §16(a)'s
requirement that insiders disclose any changes to their ownership in-
terests.  That failure, according to Simmonds, tolled §16(b)'s 2-year
time period.  The District Court dismissed the complaints as untime-
ly.  The Ninth Circuit reversed.  Citing its decision in *Whittaker* v.
*Whittaker Corp.*, 639 F. 2d 516, it held that the limitations period is
tolled until an insider files the §16(a) disclosure statement "regard-
less of whether the plaintiff knew or should have known of the con-
duct at issue."

*Held:* Even assuming that the 2-year period can be extended (a ques-
tion on which the Court is equally divided), the Ninth Circuit erred in
determining that it is tolled until a §16(a) statement is filed.  The
text of §16(b)—which starts the clock from "the date such profit was
realized," §78p(b)—simply does not support the *Whittaker* rule.  The
rule is also not supported by the background rule of equitable tolling
for fraudulent concealment.  Under long-settled equitable-tolling
principles, a litigant must establish "(1) that he has been pursuing

Syllabus

his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Pace* v. *DiGuglielmo*, 544 U. S. 408, 418.  Tolling therefore ceases when fraudulently concealed facts are, or should have been, discovered by the plaintiff.  Allowing tolling to continue beyond that point would be *inequitable* and inconsistent with the general purpose of statutes of limitations: "to protect defendants against stale or unduly delayed claims." *John R. Sand & Gravel Co.* v. *United States*, 552 U. S. 130, 133.  The *Whittaker* rule's inequity is especially apparent here, where the theory of §16(b) liability is so novel that petitioners can plausibly claim that they were not aware they had to file a §16(a) statement.  Under the *Whittaker* rule, alleged insiders who disclaim the necessity of filing are compelled either to file or to face the prospect of §16(b) litigation in perpetuity.  Had Congress intended the possibility of such endless tolling, it would have said so.  Simmonds' arguments to the contrary are unpersuasive.  The lower courts should consider in the first instance how usual equitable tolling rules apply in this case.  Pp. 4–8.

638 F. 3d 1072, vacated and remanded.

SCALIA, J., delivered the opinion of the Court, in which all other Members joined, except ROBERTS, C. J., who took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 10–1261

_____

## CREDIT SUISSE SECURITIES (USA) LLC, ET AL., PETITIONERS *v.* VANESSA SIMMONDS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[March 26, 2012]

JUSTICE SCALIA delivered the opinion of the Court.

We consider whether the 2-year period to file suit against a corporate insider under §16(b) of the Securities Exchange Act of 1934, 15 U. S. C. §78p(b), begins to run only upon the insider's filing of the disclosure statement required by §16(a) of the Act, §78p(a).

I

Under §16(b) of the Exchange Act, 48 Stat. 896, as amended, a corporation or security holder of that corporation may bring suit against the officers, directors, and certain beneficial owners[1] of the corporation who realize any profits from the purchase and sale, or sale and purchase, of the corporation's securities within any 6-month period. "The statute imposes a form of strict liability" and requires insiders to disgorge these "short-swing" profits "even if they did not trade on inside information or intend to profit on the basis of such information." *Gollust* v. *Mendell*, 501 U. S. 115, 122 (1991). Section 16(b) provides

_____

[1] Section 16(b) regulates beneficial owners of more than 10% of any class of equity securities. 15 U. S. C. §78p(a)(1).

that suits must be brought within "two years after the date such profit was realized."[2]  15 U. S. C. §78p(b).

In 2007, respondent Vanessa Simmonds filed 55 nearly identical actions under §16(b) against financial institutions that had underwritten various initial public offerings (IPOs) in the late 1990's and 2000, including these petitioners.[3]  In a representative complaint, she alleged that the underwriters and the issuers' insiders employed various mechanisms to inflate the aftermarket price of the

————————

[2] Section 16(b) provides in full:

"For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) or a security-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act) involving any such equity security within any period of less than six months, unless such security or security-based swap agreement was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security or security-based swap agreement purchased or of not repurchasing the security or security-based swap agreement sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security or security-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act) involved, or any transaction or transactions which the [Securities and Exchange] Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."  15 U. S. C. §78p(b).

[3] Simmonds also named the issuing companies as nominal defendants. *In re: Section 16(b) Litigation*, 602 F. Supp. 2d 1202, 1204 (WD Wash. 2009).

stock to a level above the IPO price, allowing them to profit from the aftermarket sale. App. 59. She further alleged that, as a group, the underwriters and the insiders owned in excess of 10% of the outstanding stock during the relevant time period, which subjected them to both disgorgement of profits under §16(b) and the reporting requirements of §16(a). *Id.*, at 61. See 15 U. S. C. §78m(d)(3); 17 CFR §§240.13d–5(b)(1) and 240.16a–1(a)(1) (2011). The latter requires insiders to disclose any changes to their ownership interests on a document known as a Form 4, specified in the Securities and Exchange Commission regulations. 15 U. S. C. §78p(a)(2)(C); 17 CFR §240.16a–3(a). Simmonds alleged that the underwriters failed to comply with that requirement, thereby tolling §16(b)'s 2-year time period.[4] App. 62.

Simmonds' lawsuits were consolidated for pretrial purposes, and the United States District Court for the Western District of Washington dismissed all of her complaints.[5] *In re: Section 16(b) Litigation*, 602 F. Supp. 2d 1202 (2009). As relevant here, the court granted petitioners' motion to dismiss 24 complaints on the ground that §16(b)'s 2-year time period had expired long before Simmonds filed the suits. The United States Court of Appeals for the Ninth Circuit reversed in relevant part. 638 F. 3d 1072 (2011). Citing its decision in *Whittaker* v. *Whittaker Corp.*, 639 F. 2d 516 (1981), the court held that §16(b)'s limitations period is "tolled until the insider discloses his transactions in a Section 16(a) filing, regardless of

―――――――

[4] Petitioners have consistently disputed §16's application to them, arguing that they, as underwriters, are generally exempt from the statute's coverage. See 17 CFR §§240.16a–7(a) and 240.16a–10. Simmonds contends that this exemption does not apply where the underwriters do not act in good faith. Brief for Respondent 49. See §240.16a–7(a). We express no view on this issue.

[5] Simmonds voluntarily dismissed one of the complaints. 602 F. Supp. 2d, at 1206, n. 4.

whether the plaintiff knew or should have known of the conduct at issue." 638 F. 3d, at 1095. Judge Milan Smith, Jr., the author of the panel opinion, also specially concurred, expressing his disagreement with the *Whittaker* rule, but noting that the court was compelled to follow Circuit precedent. *Id.*, at 1099–1101. We granted certiorari, 564 U. S. ___ (2011).

## II

Petitioners maintain that these suits were properly dismissed because they were filed more than two years after the alleged profits were realized. Pointing to dictum in *Lampf, Pleva, Lipkind, Prupis & Petigrow* v. *Gilbertson*, 501 U. S. 350 (1991), petitioners argue that §16(b)'s limitations period is a period of repose, which is not to be "extended to account for a plaintiff's discovery of the facts underlying a claim." Brief for Petitioners 17. See *Lampf*, *supra*, at 360, n. 5 ("Section 16(b) . . . sets a 2-year . . . period of repose"). We do not reach that contention, because we conclude that, even assuming that the 2-year period can be extended, the Ninth Circuit erred in determining that it is tolled until the filing of a §16(a) statement.

In adopting its rule in *Whittaker*, the Ninth Circuit expressed its concern that "[i]t would be a simple matter for the unscrupulous to avoid the salutary effect of Section 16(b) . . . simply by failing to file . . . reports in violation of subdivision (a) and thereby concealing from prospective plaintiffs the information they would need" to bring a §16(b) action. 639 F. 2d, at 528 (internal quotation marks omitted). Assuming that is correct, it does not follow that the limitations period is tolled until the §16(a) statement is filed. Section 16 itself quite clearly does not extend the period in that manner. The 2-year clock starts from "the date such profit was realized." §78p(b). Congress could have very easily provided that "no such suit shall be

brought more than two years after *the filing of a statement under subsection (a)(2)(C).*" But it did not. The text of §16 simply does not support the *Whittaker* rule.

The *Whittaker* court suggested that the background rule of equitable tolling for fraudulent concealment[6] operates to toll the limitations period until the §16(a) statement is filed. See 639 F. 2d, at 527, and n. 9. Even accepting that equitable tolling for fraudulent concealment is triggered by the failure to file a §16(a) statement, the *Whittaker* rule is completely divorced from long-settled equitable-tolling principles. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) *that he has been pursuing his rights diligently*, and (2) that some extraordinary circumstances stood in his way." *Pace* v. *DiGuglielmo*, 544 U. S. 408, 418 (2005) (emphasis added). It is well established, moreover, that when a limitations period is tolled because of fraudulent concealment of facts, the tolling ceases when those facts are, or should have been, discovered by the plaintiff. 2 C. Corman, Limitation of Actions §9.7.1, pp. 55–57 (1991). Thus, we have explained that the statute does not begin to run until discov-

_____

[6] Relying on our decision in *American Pipe & Constr. Co.* v. *Utah*, 414 U. S. 538 (1974), Simmonds argues that the *Whittaker* rule is best understood as applying legal—rather than equitable—tolling. In *American Pipe*, we held that "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U. S., at 554. We based our conclusion on "the efficiency and economy of litigation which is a principal purpose of [Fed. Rule Civ. Proc. 23 class actions]." *Id.*, at 553. Although we did not employ the term "legal tolling," some federal courts have used that term to describe our holding on the ground that the rule "is derived from a statutory source," whereas equitable tolling is "judicially created." *Arivella* v. *Lucent Technologies, Inc.*, 623 F. Supp. 2d 164, 176 (Mass. 2009). The label attached to the *Whittaker* rule does not matter. As we proceed to explain, neither general equitable-tolling principles nor the "statutory source" of §16 supports the conclusion that the limitations period is tolled until the filing of a §16(a) statement.

ery of the fraud "'where the party injured by the fraud remains in ignorance of it *without any fault or want of diligence or care on his part.*'" *Lampf*, *supra*, at 363 (quoting *Bailey* v. *Glover*, 21 Wall. 342, 348 (1875); emphasis added). Allowing tolling to continue beyond the point at which a §16(b) plaintiff is aware, or should have been aware, of the facts underlying the claim would quite certainly be *inequitable* and inconsistent with the general purpose of statutes of limitations: "to protect defendants against stale or unduly delayed claims." *John R. Sand & Gravel Co.* v. *United States*, 552 U. S. 130, 133 (2008).

The inequity of the *Whittaker* rule is especially apparent in a case such as this, where the theory of §16(b) liability of underwriters is so novel that petitioners can plausibly claim that they were not aware they were required to file a §16(a) statement. And where they disclaim the necessity of filing, the *Whittaker* rule compels them either to file or to face the prospect of §16(b) litigation in perpetuity. Simmonds has acknowledged that "under her theory she could buy stocks in companies who had IPOs 20 years ago and bring claims for short-swing transactions if the underwriters had undervalued a stock." 602 F. Supp. 2d, at 1218. The potential for such endless tolling in cases in which a reasonably diligent plaintiff would know of the facts underlying the action is out of step with the purpose of limitations periods in general. And it is especially at odds with a provision that imposes strict liability on putative insiders, see *Gollust*, 501 U. S., at 122. Had Congress intended this result, it most certainly would have said so.

Simmonds maintains that failing to apply the *Whittaker* rule would obstruct Congress's objective of curbing short-swing speculation by corporate insiders. This objective, according to Simmonds, is served by §16(a) statements, which "provide the information necessary to trigger §16(b) enforcement." Brief for Respondent 24. Simmonds—like the Ninth Circuit in *Whittaker*—disregards the most

glaring indication that Congress did not intend that the limitations period be categorically tolled until the statement is filed: The limitations provision does not say so. This fact alone is reason enough to reject a departure from settled equitable-tolling principles. Moreover, §16's purpose is fully served by the rules outlined above, under which the limitations period would not expire until two years after a reasonably diligent plaintiff would have learned the facts underlying a §16(b) action. The usual equitable-tolling inquiry will thus take account of the unavailability of sources of information other than the §16(a) filing. Cf., *e.g.*, *Ruth* v. *Unifund CCR Partners*, 604 F. 3d 908, 911–913 (CA6 2010); *Santos ex rel. Beato* v. *United States*, 559 F. 3d 189, 202–203 (CA3 2009). The oddity of Simmonds' position is well demonstrated by the circumstances of this case. Under the *Whittaker* rule, because petitioners have yet to file §16(a) statements (as noted earlier they do not think themselves subject to that requirement), Simmonds still has two years to bring suit, even though she is so well aware of her alleged cause of action that she has already sued. If §16(a) statements were, as Simmonds suggests, indispensable to a party's ability to sue, Simmonds would not be here.

Simmonds also asserts that application of established equitable-tolling doctrine in this context would be inconsistent with Congress's intention to establish in §16 a clear rule that is capable of "mechanical application." Brief for Respondent 57 (internal quotation marks omitted). Equitable tolling, after all, involves fact-intensive disputes "about what the notice was, where it was disseminated, who received it, when it was received, and whether it provides sufficient notice of relevant Section 16(a) facts." *Id,* at 56–57. Of course this argument counsels just as much in favor of the "statute of repose" rule that petitioners urge (that is, no tolling whatever) as it does in favor of the *Whittaker* rule. No tolling is certainly an easily ad-

ministrable bright-line rule. And assuming some form of tolling does apply, it is preferable to apply that form which Congress was certainly aware of, as opposed to the rule the Ninth Circuit has fashioned.[7] See *Meyer* v. *Holley*, 537 U. S. 280, 286 (2003) ("Congress' silence, while permitting an inference that Congress intended to apply *ordinary* background tort principles, cannot show that it intended to apply an unusual modification of those rules").

\*    \*    \*

Having determined that §16(b)'s limitations period is not tolled until the filing of a §16(a) statement, we remand for the lower courts to consider how the usual rules of equitable tolling apply to the facts of this case.[8] We are divided 4 to 4 concerning, and thus affirm without precedential effect, the Court of Appeals' rejection of petitioners' contention that §16(b) establishes a period of repose that is not subject to tolling. The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

THE CHIEF JUSTICE took no part in the consideration or decision of this case.

––––––––––

[7] It is for this reason that we also reject the Second Circuit's rule that the 2-year period is tolled until the plaintiff "gets actual notice that a person subject to Section 16(a) has realized specific short-swing profits that are worth pursuing," *Litzler* v. *CC Investments, L. D. C.*, 362 F. 3d 203, 208 (2004). As that court itself recognized, this actual-notice rule departs from usual equitable-tolling principles. See *id.*, at 207.

[8] The District Court said that "there is no dispute that all of the facts giving rise to Ms. Simmonds' complaints against [petitioners] were known to the shareholders of the Issuer Defendants for at least five years before these cases were filed," 602 F. Supp. 2d, at 1217. The Court of Appeals did not consider the accuracy of that statement, which Simmonds disputes, Brief for Respondent 12, since it concluded the period is tolled until a §16(a) statement is filed.