**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MERRILL CHANCE,

     Plaintiff - Appellant,

v.

RYAN ZINKE, in his official capacity as
Secretary of the United States Department
of Interior; UNITED STATES BUREAU
OF INDIAN AFFAIRS, an agency within
the United States Department of Interior;
DARRYL LACOUNTE, in his official
capacity as Director of the United States
Bureau of Indian Affairs; GREAT
SOUTHWESTERN EXPLORATION,
INC., an Oklahoma corporation,

     Defendants - Appellees.

------------------------------

PAWNEE NATION OF OKLAHOMA;
WALTER R. ECHO-HAWK,

     Amici Curiae.

No. 17-5057

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:16-CV-00549-JHP-FHM)**
_____

Donald A. Lepp (Gentner F. Drummond, Garry M. Gaskins, II, and Logan L. James with
him on the briefs), Drummond Law, PLLC, Tulsa, Oklahoma, for Merrill Chance,
Plaintiff-Appellant.

Tamara N. Rountree, Environmental & Natural Resources Division, United States Department of Justice, Washington, D.C. (Jeffrey H. Wood, Eric Grant, Mark R. Haag, and Jody H. Schwarz, Environmental & Natural Resources Division, United States Department of Justice, Washington, D.C., and Charles R. Babst, Jr., Kristen D. Kokinos, and Stephen L. Simpson, Office of the Solicitor, United States Department of the Interior, Washington, D.C., with her on the brief), for Ryan Zinke, Darryl LaCounte, and United States Bureau of Indian Affairs, Defendants-Appellees.

James D. Sicking, Jr., Tulsa, Oklahoma (Thomas Mortensen, Tulsa, Oklahoma, with him on the brief), for Great Southwestern Exploration, Inc., Defendant-Appellee.

Michael S. Freeman, Earthjustice, Denver, Colorado (Yuting Chi, Earthjustice, Denver, Colorado, and Don Mason, Attorney General, Pawnee Nation of Oklahoma, Pawnee, Oklahoma, with him on the brief) for the Pawnee Nation of Oklahoma and Walter R. Echo-Hawk, Amici Curiae.

_____

Before **LUCERO**, **PHILLIPS**, and **MORITZ**, Circuit Judges.

_____

**MORITZ**, Circuit Judge.

_____

Merrill Chance, a landowner in Osage County, Oklahoma, sued the government[1] to void a lease and various permits that allow Great Southwestern Exploration, Inc. (GSE) to drill for oil and gas beneath his property. He also seeks damages from GSE for trespassing on his property. The district court ruled that Chance's claims against the government were untimely under 28 U.S.C. § 2401(a);

---

[1] Chance named as defendants the Bureau of Indian Affairs (BIA), Department of Interior Secretary Sally Jewell in her official capacity, and BIA Director Michael Black in his official capacity. Ryan Zinke has since succeeded Jewell as interior secretary, and Darryl LaCounte has since succeeded Black as acting BIA director. Zinke and LaCounte thus automatically substitute for Jewell and Black as defendants. *See* Fed. R. App. P. 43(c)(2). We refer to these defendants collectively as "the government."

thus, it reasoned, it lacked subject-matter jurisdiction to hear these claims and therefore dismissed them. It also dismissed Chance's claims against GSE.

We agree with the district court that Chance's claims against the government are untimely. But the Supreme Court has warned us to beware of "profligate use of the term 'jurisdiction.'" *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013). Today we heed that warning and hold that the district court wrongly concluded it lacked subject-matter jurisdiction over Chance's claims against the government.

Therefore, we reverse the district court's order dismissing Chance's claims against the government for lack of subject-matter jurisdiction and instruct the district court to dismiss those claims for failure to state a claim. We affirm the district court's judgment over Chance's claims against GSE because, to the extent Chance's claims against the government fail, the district court properly declined to exercise supplemental jurisdiction over Chance's claims against GSE.

**Background**

The controversy surrounding Chance's property stems from the government's unusual presence in Osage County. Before the turn of the twentieth century, Osage County was a tribal reservation belonging to the Osage Nation. *See Osage Nation v. Irby*, 597 F.3d 1117, 1120 (10th Cir. 2010). But Congress disestablished the reservation in 1906 upon Oklahoma's induction into the union. *See id.* At the same time, Congress severed the surface estate from its subterranean mineral estate. *Id.* It divided the surface estate and distributed most of the parcels to tribal members. *Id.* at

3

1120–21. But importantly, the government retained the subterranean estate in trust for the Osage Nation's benefit. *See id.* at 1120.

Today, Department of Interior regulations task the Osage Agency of the BIA with managing this trust. *See* 25 C.F.R. §§ 226.1–226.46. These regulations give the Osage Agency authority to lease tracts of the subterranean estate, with the Osage Tribal Council's permission. § 226.2(b). The Osage Agency exercises significant oversight over these leases. Among other responsibilities, it must approve all new oil leases, *id.*; assignments of existing leases, § 226.15(b); and drilling permits, § 226.16(b).

Chance is the surface owner of a tract of land in Osage County. In 1963, the Osage Agency granted the Eason Oil Company (Eason) an oil lease for deposits underlying Chance's property. Eason drilled two wells in 1964 that remain in operation today. With the BIA's approval, Eason assigned its lease to GSE in 1991. The BIA granted GSE permits to drill three new wells that same year. Two of these wells remain in operation. Chance maintains that the construction and operation of these wells has damaged his surface property in various ways over the years.

In October 2016—25 years after Eason assigned its lease to GSE and the BIA granted GSE permits to drill new wells on the lease—Chance filed this lawsuit. He argued that 42 U.S.C. § 4332(c), part of the National Environmental Policy Act (NEPA) of 1969, required the Osage Agency to conduct site-specific environmental-impact assessments before approving Eason's assignment to GSE and GSE's new drilling permits. And he alleged that the Osage Agency never conducted these

4

assessments. Chance also asserted that the Osage Agency failed to notify his predecessors-in-interest that it approved the new permits. Further, he contended that the Osage Agency improperly took various other unknown actions related to his property without conducting site-specific environmental-impact assessments or notifying him or his predecessors-in-interest.

Additionally, Chance asserted that the Osage Agency's failure to comply with NEPA reflects systemic problems. He alleged that for decades, the Osage Agency had been relying only on an assessment it conducted in 1979 that evaluated the general impact of the Osage County drilling program rather than conducting site-specific environmental-impact assessments, as Chance argued NEPA requires. Chance further alleged that the Osage Agency attempted to conceal its noncompliance with NEPA.

The government moved to dismiss Chance's claims against it for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and GSE moved to dismiss Chance's claims against it for failure to state a claim under Rule 12(b)(6). The district court granted both motions. It first ruled that Chance's claims against the government were untimely under § 2401(a), which establishes a six-year statute of limitations for nontort claims against the government. Chance urged the district court to equitably toll § 2401(a)'s limitations period. But the district court determined that § 2401(a) is a jurisdictional bar and thus not subject to equitable tolling. Alternatively, it ruled that Chance wasn't entitled to equitable tolling under

the facts of this case. The district court further ruled that Chance failed to exhaust his administrative remedies. And it denied Chance's motion for jurisdictional discovery.

The district court then concluded that Chance's claims against GSE necessarily relied on his claims against the government, so it granted GSE's Rule 12(b)(6) motion. It alternatively declined to exercise supplemental jurisdiction over Chance's claims against GSE and dismissed for lack of subject-matter jurisdiction. Chance appeals the order granting both defendants' motions and denying his motion for jurisdictional discovery.

## Analysis

### I.      Chance's Claims Against the Government

#### A.      Subject-Matter Jurisdiction

Chance appeals the district court's order granting the government's Rule 12(b)(1) motion. We review the district court's ruling on this motion de novo, *see Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008), and conclude that the court erred by treating § 2401(a) as a limit on its jurisdiction.

At the outset, the government invites us to bypass this jurisdictional question by (1) assuming the district court erred by treating § 2401(a) as jurisdictional but (2) nevertheless affirming because Chance fails to state a claim on which relief can be granted. We must decline this invitation. The Supreme Court has made clear that courts may not exercise "hypothetical jurisdiction" to reach the merits of a case, even if proceeding in such a manner might offer a more straightforward path to its resolution. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting

6

*United States v. Troescher*, 99 F.3d 933, 934 n.1 (9th Cir. 1996), *overruled by Steel Co.*, 523 U.S. 83). Thus, the district court couldn't assume it had jurisdiction to dismiss Chance's claims under Rule 12(b)(6). And we can't make that assumption either. Accordingly, the question before us is whether the district court correctly concluded it lacked subject-matter jurisdiction over Chance's claims.

"For the last decade, the Supreme Court has been on a mission to rein in profligate uses of 'jurisdiction,' a word with 'many, too many, meanings.'" *Herr v. U.S. Forest Serv.*, 803 F.3d 809, 813 (6th Cir. 2015) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006)); *see also, e.g.*, *Auburn Reg'l*, 568 U.S. at 148–49 (holding that filing deadline for administrative appeal from denial of certain Medicare reimbursements isn't jurisdictional bar to appeal); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 431 (2011) (holding that filing deadline for appeal from Board of Veterans' Appeals to United States Court of Appeals for Veterans Claims isn't jurisdictional bar to appeal); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010) (holding that Copyright Act's registration requirement isn't jurisdictional bar to Copyright Act lawsuit); *Arbaugh*, 546 U.S. at 516 (holding that Title VII's minimum-size requirement for employer coverage isn't jurisdictional bar to Title VII lawsuit).

The Court's campaign is rooted in legitimate concern. Treating a rule as jurisdictional is more than just semantics; it has real-world effects on the parties and can be detrimental to judicial economy. *See Henderson*, 562 U.S. at 434. A case can be dismissed for lack of subject-matter jurisdiction at any stage in the litigation—or

even after litigation has ended—so "[t]ardy jurisdictional objections can . . . result in a waste of adjudicatory resources and can disturbingly disarm litigants." *Auburn Reg'l*, 568 U.S. at 153; *see also Henderson*, 562 U.S. at 435 ("Indeed, a party may raise such an objection even if the party had previously acknowledged the trial court's jurisdiction. And if the trial court lacked jurisdiction, many months of work on the part of the attorneys and the court may be wasted." (internal citation omitted)). Additionally "[b]randing a rule as going to a court's subject-matter jurisdiction alters the normal operation of our adversarial system" by requiring courts to sua sponte address that rule. *Henderson*, 562 U.S. at 434.

"Because the consequences that attach to the jurisdictional label may be so drastic, [the Court has] tried in recent cases to bring some discipline to the use of this term." *Id.* at 435. Therefore, "a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction. Other rules, even if important and mandatory . . . should not be given the jurisdictional brand." *Id.* (internal citations omitted). To that end, the Court has "adopted a 'readily administrable bright line' for determining whether to classify a statutory limitation as jurisdictional": we may treat a rule as jurisdictional only when "Congress has 'clearly state[d]' that the rule is jurisdictional." *Auburn Reg'l*, 568 U.S. at 153  (alteration in original) (quoting *Arbaugh*, 546 U.S. at 515–16).

With these concerns in mind, we now turn to the district court's jurisdictional ruling.

Section 2401(a) requires that all nontort actions against the government be filed within six years of the date on which the right accrues. Chance doesn't dispute that his claims accrued in 1991, when the government approved GSE's lease assignment and drilling permits. Nor does he dispute that he filed his October 2016 lawsuit far outside this six-year deadline. Instead, he argues that he's entitled to equitable tolling to extend that deadline because (1) the government didn't notify his predecessors-in-interest that it approved GSE's lease assignment and new drilling permits; and (2) the government concealed the fact that it didn't conduct site-specific environmental-impact assessments when it approved the assignment and the permits.

The district court determined that § 2401(a) presents a jurisdictional requirement for lawsuits against the government. And because courts can't toll statutes of limitations that deprive them of jurisdiction, it rejected Chance's equitable-tolling argument. Chance asks us to take the opposite path and hold that § 2401(a) isn't jurisdictional and can thus be equitably tolled. This presents an issue of first impression for this court. Other circuits are split. *Compare Herr v. U.S. Forest Serv.*, 803 F.3d 809, 812 (6th Cir. 2015) (holding § 2401(a) isn't jurisdictional); *Clymore v. United States*, 217 F.3d 370, 374 (5th Cir. 2000) (same); *and Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 770 (9th Cir. 1997) (same), *with Mendoza v. Perez*, 754 F.3d 1002, 1018 (D.C. Cir. 2014) (characterizing § 2401(a) as jurisdictional); *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006) (per curiam) (same); *Hopland Band of Pomo Indians v. United*

9

*States*, 855 F.2d 1573, 1576–77 (Fed. Cir. 1988) (same); *and Konecny v. United States*, 388 F.2d 59, 61–62 (8th Cir. 1967) (same).

The Supreme Court has "made plain that most time bars are nonjurisdictional." *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015). This is true "even when the time limit is important (most are) and even when it is framed in mandatory terms (again, most are)." *Id.* Thus, "Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional." *Id.*; *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990) (creating rebuttable presumption that statutes of limitations on claims against government are subject to equitable tolling). The Supreme Court—like this court—hasn't specifically resolved whether § 2401(a) is jurisdictional. And the Court has reached two different conclusions about two related statutes of limitations.

First, the Court concluded that 28 U.S.C. § 2501, which governs lawsuits brought against the government in the Court of Federal Claims, is jurisdictional. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 132 (2008). In *John R. Sand*, the Court recognized its admonition in *Irwin* that statutes of limitations on claims against the government are presumptively subject to tolling (and are thus nonjurisdictional),[2] but it nevertheless concluded this presumption was rebutted by

_____

[2] The Court in *Irwin* addressed courts' power to toll statutes of limitations for claims against the government without expressly framing the inquiry as a question of jurisdiction. *See* 498 U.S. at 95–96. But in *John R. Sand*, the Court apparently accepted that *Irwin* also stands for the more general proposition that statutes of limitations for claims against the government are presumptively nonjurisdictional. Tellingly, *John R. Sand* addressed specifically whether § 2501 could be waived—not

pre-*Irwin* precedent dating back to the nineteenth century. *See id.* at 136–138. It explained that it directly held in these prior cases that § 2501 was jurisdictional and that *Irwin*'s general rule didn't overturn these cases. *Id.* at 138; *see also Soriano v. United States*, 352 U.S. 270, 271 (1957); *United States v. New York*, 160 U.S. 598, 616–17 (1896); *De Arnaud v. United States*, 151 U.S. 483, 495–96 (1894); *Finn v. United States*, 123 U.S. 227, 232–33 (1887); *Kendall v. United States*, 107 U.S. 123, 125–26 (1883). The Court even recognized that its holding created an anomaly. But it explained that "the earlier cases lead, at worst, to different interpretations of different, but similarly worded, statutes; they do not produce 'unworkable' law." *John R. Sand*, 552 U.S. at 139 (quoting *United States v. IBM Corp.*, 517 U.S. 843, 856 (1996)).

Several terms later, the Court considered whether § 2401(b)'s statute of limitations, which governs tort claims against the government, is jurisdictional. *See Kwai Fun Wong*, 135 S. Ct. at 1629. This time—free from the clutches of stare decisis—the Court inquired whether Congress had clearly stated that § 2401(b) is jurisdictional. *See id.* at 1632. And it concluded that Congress "provided no clear statement indicating that § 2401(b) is the rare statute of limitations that can deprive a court of jurisdiction." *Id.*

---

whether it could be tolled. *See* 552 U.S. at 132–33. But the Court considered *Irwin*'s inquiry as identical to the one before it in *John R. Sand*, save for the difference in statutes. *See id.* at 136–37. And because not all statutes of limitations that pose nonjurisdictional bars are subject to equitable tolling, *see Kwai Fun Wong*, 135 S. Ct. at 1631 n.2, *Irwin* only would have been relevant to the Court's waiver inquiry if it implicated jurisdiction more generally as opposed to just equitable tolling.

In so holding, the Court rejected the government's argument that because § 2401(b) is similarly worded to § 2501, the Court should follow *John R. Sand* and conclude that § 2401(b) is jurisdictional too. *Id.* at 1634. The Court rather emphatically explained that the one and only reason it concluded in *John R. Sand* that § 2501 is jurisdictional is because stare decisis required it to. *See id.* at 1636 ("What is special about [§ 2501]'s deadline, *John R. Sand* recognized, comes merely from this Court's prior rulings."). And in *Kwai Fun Wong*, stare decisis "play[ed] no role" because the Court "ha[d] not previously considered whether § 2401(b) restricts a court's authority." *Id.*

Here, Chance invites us to follow *Kwai Fun Wong* and hold that § 2401(a) is nonjurisdictional because Congress hasn't clearly stated otherwise and the Court hasn't directly held otherwise. If only it were so simple. As explained in some detail below, despite its proximity in the federal code to § 2401(b), § 2401(a) is a closer genetic relative to § 2501. And the government cautions that § 2401(a)'s and § 2501's shared legislative history compels us to interpret these statutes identically. Thus, the government argues the court should follow *John R. Sand* and conclude that like § 2501, § 2401(a) is jurisdictional.

Section 2501 originated in an 1863 statute. *See* Act of Mar. 3, 1863, ch. 92, § 10, 12 Stat. 765, 767. In the years that followed, the Court twice held that this statute of limitations was jurisdictional because it acted as a restriction on the government's sovereign-immunity waiver. *See Finn*, 123 U.S. at 232–33; *Kendall*, 107 U.S. at 125–26. Then, in 1887, Congress greatly expanded its sovereign-

12

immunity waiver with the Tucker Act. *See* Tucker Act, ch. 359, 24 Stat. 505 (1887); *Herr*, 803 F.3d at 815. The Tucker Act contained two parts—the "Big Tucker Act" and the "Little Tucker Act." *Herr*, 803 F.3d at 815. The Big Tucker Act expanded the Court of Claims' jurisdiction. *See* Tucker Act § 1; *Herr*, 803 F.3d at 815. The Little Tucker Act gave the district court concurrent jurisdiction with the Court of Claims over claims against the government for $1,000 or less in damages. *See* Tucker Act § 2; *Herr*, 803 F.3d at 815. The Tucker Act also created a new six-year statute of limitations that governed all lawsuits against the government—whether filed in the Court of Claims or the district court. *See* Tucker Act § 1; *Herr*, 803 F.3d at 815. But importantly, it didn't repeal the 1863 statute of limitations, so the two provisions coextensively governed lawsuits in the Court of Claims. *See United States v. Greathouse*, 166 U.S. 601, 605 (1897).

In 1911, Congress created separate statutes of limitations for the Big and Little Tucker Acts. *Herr*, 803 F.3d at 816. For the Big Tucker Act, it borrowed language from the 1863 statute of limitations. *See* Act of Mar. 3, 1911, ch. 231, § 156, 36 Stat. 1087, 1139. For the Little Tucker Act, Congress retained the language from the Tucker Act's statute of limitations. *See id.* § 24(20), 36 Stat. 1087, 1093; *Herr*, 803 F.3d at 816. Then, in 1948, Congress amended the Little Tucker Act's statute of limitations so that it would apply to all civil actions against the government as opposed to only low-value claims. *See* Act of June 25, 1948, ch. 646, § 2401(a), 62 Stat. 869, 971. And by this same act, Congress separated the Little Tucker Act's statute of limitations from its jurisdictional grant and moved the statute of limitations

13

to § 2401(a). *Compare id.* (providing statute of limitations), *with id.* § 1346(a), 62 Stat. 869, 933 (providing jurisdictional grant). It also codified the Big Tucker Act's statute of limitations at § 2501. *See id.* § 2501, 62 Stat. 869, 976.

The government argues that this history rebuts *Irwin*'s presumption that § 2401(a) isn't jurisdictional. Essentially, the government maintains that the Tucker Act gave the district courts concurrent jurisdiction with the Court of Claims—albeit capped at claims of $1,000. Thus, because § 2501's predecessor was jurisdictional, the Tucker Act's statute of limitations must have been jurisdictional too; otherwise the district courts' jurisdiction would have been broader than the Court of Claims' jurisdiction. And, the reasoning goes, because we can trace § 2401(a) back to the Tucker Act's statute of limitations, § 2401(a) must also be jurisdictional.

This argument fails for two reasons. First, the Court made clear in *John R. Sand* and again in *Kwai Fun Wong* that the only reason § 2501 is jurisdictional is because the Court had directly concluded as much in pre-*Irwin* precedent. *See Kwai Fun Wong*, 135 S. Ct. at 1636; *John R. Sand*, 552 U.S. at 138. And regardless of how strong an argument there is that we should interpret §§ 2401(a) and 2501 identically, stare decisis "plays no role" in interpreting the former. *Kwai Fun Wong*, 135 S. Ct. at 1636. Section 2401(a) originated in the Tucker Act, while § 2501 originated in the 1863 statute. And the cases that the Court followed in *John R. Sand* all dealt with either the original 1863 statute, *see New York*, 160 U.S. at 616; *De Arnaud*, 151 U.S.

14

at 495; *Finn*, 123 U.S. at 231; *Kendall*, 107 U.S. at 124, or § 2501 itself, *see Soriano*, 352 U.S. at 271 (1957).[3]

Next, even if the original Tucker Act's statute of limitations was meant to be jurisdictional, that changed when Congress codified it at § 2401(a). At that point, Congress separated the statute of limitations from the jurisdictional grant and enlarged it to cover all nontort claims against the government. As the Sixth Circuit concluded, this "demonstrates that § 2401(a) was designed to serve as a standard, mine-run statute of limitations without jurisdictional qualities." *Herr*, 803 F.3d at 817. Further, if Congress intended identical statutes of limitations to govern the Big Tucker Act and the Little Tucker Act, it's not clear why Congress would have created separate, differently worded statutes of limitations in 1911.[4]

---

[3] The government asserts that the Court held in *United States v. Wardwell*, 172 U.S. 48 (1898), that the Tucker Act's statute of limitations was jurisdictional. But *Wardwell* too dealt with the 1863 statute of limitations, not the Tucker Act. *See* 172 U.S. at 52 (discussing 1863 statute of limitations). The government points to no case that actually interprets § 2401(a) or its predecessors as jurisdictional.

[4] For the Big Tucker Act, the 1911 amendment provided, "Every claim against the United States cognizable by the Court of Claims, shall be forever barred unless the petition setting forth a statement thereof is filed in the court . . . within six years after the claim first accrues." Act of Mar. 3, 1911, ch. 231, § 156, 36 Stat. 1087, 1139. This language originated in the 1863 statute of limitations. *See* Act of Mar. 3, 1863, ch. 92, § 10, 12 Stat. 765, 767. For the Little Tucker Act, the 1911 amendment provided "[t]hat no suit against the Government of the United States shall be allowed under this paragraph unless the same shall have been brought within six years after the right accrued for which the claim is made." Act of Mar. 3, 1911, ch. 231, § 24(20), 36 Stat. 1087, 1093. This language originated in the Tucker Act. *See* Tucker Act § 1.

We won't dwell on what Congress specifically intended by the differences in this language because *Kwai Fun Wong* teaches us that there's limited utility to comparing the language in statutes of limitations. *See* 135 S. Ct. at 1634–35. We

Given the Court's strong recent emphasis on limiting jurisdictional bars and its unusually frank recognition in *John R. Sand* and *Kwai Fun Wong* that stare decisis and stare decisis *alone* renders § 2501 jurisdictional, we conclude that § 2401(a) isn't jurisdictional. To our knowledge, the only circuit that has considered this issue since *Kwai Fun Wong*—the Sixth—reached the same conclusion. *See Herr*, 803 F.3d at 812. And although the D.C. Circuit held otherwise in *Spannaus v. United States Department of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987), it has questioned that holding in light of the Court's recent campaign against erroneous jurisdictional restrictions. *See Mendoza*, 754 F.3d at 1018 n.11. We now follow the Sixth Circuit's extensive and persuasive analysis and hold that § 2401(a)'s statute of limitations isn't a jurisdictional requirement. *See generally Herr*, 803 F.3d at 813–18. Thus, the district court erred when it dismissed Chance's complaint for lack of subject-matter jurisdiction on timeliness grounds.

Accordingly, we reverse the portion of the district court's order dismissing Chance's claims against the government for lack of subject-matter jurisdiction. In the interest of judicial economy, however, we nevertheless evaluate the district court's alternative conclusion that Chance is not entitled to equitable tolling.[5] *Cf. Odom v. Penske Truck Leasing Co.*, 893 F.3d 739, 742 (10th Cir. 2018) (remanding appeal

---

simply note that if Congress meant to clearly indicate that two sections of the same statute must be interpreted identically, it presumably would have given them identical language.

[5] Because we conclude that the district court had subject-matter jurisdiction, Chance's argument that the district court should have granted him jurisdictional discovery is moot.

16

from dismissal for lack of subject-matter jurisdiction for further findings and clarifying, "for the benefit of remand," that issue isn't jurisdictional).

### B.     Equitable Tolling

Although the district court erroneously concluded that § 2401(a) is jurisdictional and thus isn't subject to equitable tolling,[6] it alternatively concluded that Chance isn't entitled to equitable tolling on the facts of this case. In ruling on this issue, the district court went beyond the face of Chance's complaint to make findings of jurisdictional fact.[7] Because we conclude that this isn't a jurisdictional issue, we examine whether the district court could have reached the same conclusion looking only to the face of Chance's complaint. *See Smith*, 561 F.3d at 1098.

Although timeliness is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), "[i]f the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Jones v. Bock*, 549 U.S. 199, 215 (2007). Chance argues that he's entitled to equitable tolling because he

---

[6] Having concluded that § 2401(a) isn't jurisdictional, we assume without deciding that it may be tolled. *See Kwai Fun Wong*, 135 S. Ct. at 1631 n.2 (clarifying that not every nonjurisdictional statute of limitations is subject to equitable tolling). We don't need to answer this question because we conclude that even if § 2401(a) can be tolled, Chance is not entitled to tolling in this case.

[7] We observe that the district court had no reason to make factual findings on this issue. True, district courts may generally make findings when ruling on a motion to dismiss for lack of subject-matter jurisdiction. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). But to the extent the district court concluded that § 2401(a) is jurisdictional, it couldn't apply equitable tolling regardless of the facts. *See Kwai Fun Wong*, 135 S. Ct. at 1631. And to the extent it sought to evaluate in the alternative whether Chance could state a claim for relief under Rule 12(b)(6), it should have relied only on the allegations in Chance's complaint. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

17

alleged that (1) the government didn't notify his predecessors-in-interest when it approved the lease and permits; and (2) the government actively concealed the fact that it didn't conduct site-specific environmental-impact assessments. We conclude that these allegations, even if proved, don't warrant tolling the limitations period.

"Equitable tolling is granted sparingly." *Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1246 (10th Cir. 2012). And whether to grant equitable tolling is a discretionary matter for the district court. *Id.* According to "long-settled equitable-tolling principles[,] '[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) *that he has been pursuing his rights diligently*, and (2) that some extraordinary circumstances stood in his way.'" *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Chance—at most—only alleges the latter of these requirements. He fails to point to a single action that he took to pursue his rights before filing this lawsuit. That the government didn't notify Chance's predecessors-in-interest about the new drilling permits it approved and concealed its failure to conduct an environmental-impact assessment might have ultimately prevented Chance from filing a timely lawsuit. But as we explain, these wrongs didn't prevent Chance from making an attempt to pursue his rights.

In his complaint, Chance alleges that that the Osage County Cattlemen's Association attempted to probe the Osage Agency's NEPA compliance through a Freedom of Information Act (FOIA) request. *See* 5 U.S.C. § 552. And he maintains

18

that the Osage Agency resisted the request by assessing unreasonable processing fees. The implication, it seems, is that Chance could not have successfully discovered the Osage Agency's NEPA violations. But again, the fact that the Cattlemen's Association may have been impeded in completing a FOIA request has nothing to do with whether *Chance* acted to pursue *his* rights. Chance is not the Cattlemen's Association, and his allegations about its efforts only serve to highlight the flaw in his own position: the Cattlemen's Association acted to pursue its rights; Chance did not.

Nor are we convinced that the government's alleged misconduct somehow excuses Chance from his duty to pursue his rights. Chance argues that the government "lulled [him] into inaction" by actively concealing its NEPA violations. Aplt. Br. 20. We've "held that the limitations period may be tolled where a claimant has been 'actively misled.'" *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1268 (10th Cir. 1996) (quoting *Wilkerson v. Siegfried Ins. Agency, Inc.*, 683 F.2d 344, 348 (10th Cir. 1982)). But even assuming the government "actively misled" Chance about its NEPA compliance, that doesn't excuse his lack of diligence. *Id.* (quoting *Wilkerson*, 683 F.2d at 348); *see also Richardson v. Frank*, 975 F.2d 1433, 1437 (10th Cir. 1991) (remanding for trial about whether plaintiff "was misled [about limitations period] and lulled into inaction *despite his due diligence*" (emphasis added)); *Martinez v. Orr*, 738 F.2d 1107, 1112 (10th Cir. 1984) (tolling limitations period because plaintiff "acted with utmost diligence[] pursuing his claim" but EEOC "misled and lulled [plaintiff] into inaction" by indicating that he had 30 days after

19

EEOC's denial of reconsideration to file lawsuit); *Donovan v. Hahner, Foreman & Harness, Inc.*, 736 F.2d 1421, 1427–28 (10th Cir. 1984) (tolling OSHA's statute of limitations for retaliatory-discharge claim because employer concealed fact that plaintiff was discharged as opposed to laid off and plaintiff "made an effort to discover his true employment status").

Chance essentially argues that the limitations period must be tolled because—through no efforts of his own—he discovered a legal basis to void GSE's lease and permits more than 20 years after GSE began operating on his property. We cannot agree. Therefore, although we reverse the portion of the district court's order dismissing Chance's claims against the government for lack of subject-matter jurisdiction, we agree with the district court's conclusion that those claims are untimely. Accordingly, we remand to the district court with instructions to dismiss for failure to state a claim.[8]

## II.     Chance's Claims Against GSE

We now briefly turn to Chance's claims against GSE. The district court dismissed these claims for failure to state a claim because it held that they are dependent on Chance's claims against the government, which fail. Alternatively, the district court said it would exercise its discretion to decline supplemental jurisdiction over Chance's claims against GSE.

---

[8] Because we conclude that Chance's claims are untimely, we don't reach the government's alternative argument that Chance failed to exhaust his administrative remedies.

We see no reason to address the merits of these claims. The district court's alternative ruling was well within its prerogative. *See* 28 U.S.C. § 1367(c)(3) (allowing district court to decline to exercise supplemental jurisdiction over state-law claims when it has dismissed all claims within its original jurisdiction); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) (emphasizing that district courts have significant discretion to decline supplemental jurisdiction). Accordingly, we affirm this portion of the district court's order.

**Conclusion**

We reverse in part and affirm in part. We reverse the portion of the district court's order dismissing Chance's claims against the government for lack of subject-matter jurisdiction and remand with instructions to dismiss for failure to state a claim. But we affirm the district court's order dismissing Chance's claims against GSE for lack of subject-matter jurisdiction. As a final matter, we deny the government's motion to strike portions of amici's brief.